State ex rel. Ray County v. Hackmann.

# THE STATE ex rel. RAY COUNTY and W. R. PAT-TON et al., Judges of County Court, v. GEORGE E. HACKMANN, State Auditor.

In Banc, November 20, 1922.

1. **MANDAMUS: Demurrer: Admissions.** In a mandamus seeking to require the State Auditor to register certain bonds, wherein respondent waives the formal issuance of the writ and by stipulation the petition is to be taken as and for the writ, a demurrer to the petition admits all facts well pleaded therein.

2. **INJUNCTION: Election: Illegal Voters: Registration of Bonds.** The circuit court has no jurisdiction to enjoin the county court from issuing bonds on the ground that persons permitted to vote at the election authorizing them were not legal voters or that fraud was committed at the polls by election officials in casting up and counting the vote; and the pendency of such injunction suit does not justify the State Auditor in refusing to register such bonds.

3. **ELECTION: Order of Court: Substantial Compliance with Statute.** If the record entry of the order of the county court calling an election for the issuance of bonds is, when considered as a whole, in substantial compliance with the requirements of the statute, and contains anywhere within its four corners every material recital required to be made, it is sufficient.

4. **COUNTY INDEBTEDNESS: Use of Funds: Consideration in Mandamus: Registration of Bonds: Pending Injunction.** The use to which the proceeds of bonds voted by a county is to be put does not affect the validity of the bond issue, and constitutes no defense to a mandamus to compel the State Auditor to register the bonds. But there being an injunction suit pending in the circuit court to prevent the county court and other county officers from using the proceeds of voted bonds in the construction of a bridge over the Missouri River, wherein it is charged that they cannot be used for said purpose and the court is asked to prevent such officers from selling said bonds, and plaintiffs therein having appeared in this mandamus proceeding as *amici curiae* and on said ground oppose the issuance of the writ to compel the State Auditor to register the bonds, and as a ruling that the use to which the proceeds of the bonds is to be put constitutes no defense to the issuance of the writ would still leave that question a live one in

295 Mo.—27

the injunction suit, and it being of large public importance that said question be settled at an early date, the court concludes that the question of the subsequent use of the proceeds of the bonds is for decision, and proceeds to decide it.

*Held*, by WALKER, J., dissenting, with whom WOODSON, J., concurs, that the use to which the proceeds of the bonds may be put, being of no concern to the State Auditor in determining his duty to register them, nor of this court in defining his duty, and the courts being available to restrain the county court from exceeding its authority, that question is not here for decision and any discussion of the question whether the proceeds of the bonds may be applied to constructing a bridge over the Missouri River is *obiter*.

5. **BRIDGES: Across Missouri River: County Bonds.** Under the statute (Sec. 10745, R. S. 1919) authorizing a county to issue bonds and use the proceeds "for the grading, construction, paving or maintaining of paved, graveled. macadamized or rock roads and necessary bridges and culverts in the county." and the other statute (Sec. 10691, R. S. 1919) declaring that "if a bridge be necessary over any watercourse which divides one county from another, the county courts of both counties shall unite for building said bridge," a county bounded by the Missouri River may issue its bonds and use the proceeds thereof solely in paying its share of the cost of constructing a bridge over the river, although only one end of the bridge will be in the county. These and the other kindred statutes do not mean that the Road Construction Fund can be used only for the construction of necessary bridges wholly within the county.

6. ———: ———: **Navigable Stream.** It is of no controlling importance, in determining whether the proceeds of bonds voted by the county can be used to construct a necessary bridge, that the stream is a navigable one. Being navigable, the consent of Congress to the construction of the bridge must be obtained, but that is a matter of subsequent detail.

7. ———: ———: **Necessity: Cost of Building Road.** The building of a high-type, hard-surfaced road across the county to cross a bridge over the Missouri River at a designated point fixes the necessity for the construction of such bridge as a part of the very kind of roads specified in the statute (Sec. 10745, R. S. 1919). Nor is it of controlling consequence whether the cost of said road, apart from the expense of building the bridge, is paid out of the county Road Construction Fund, or by the State Highway Commission.

State ex rel. Ray County v. Hackmann.

8. ——: ——: **Act of 1919: Toll Bridges: Purchase of Franchise.**
The Act of 1919 (Laws 1919, p. 638; Sec. 10697 et seq., R. S. 1919)
provided a means by which a city situate upon a navigable stream
and separated thereby from another county might get rid of toll
charges of bridges over such stream, by purchasing the toll fran-
chise, but it relates only to the highway or the right of way over
the bridge, and does not purport to authorize the purchase or
construction of a bridge.

9. ——: ——: **Watercourses: Section 10691: Considered in Con-
nection with Other Statutes.** Section 10691, Revised Statutes 1919,
declaring that "if a bridge be necessary over any watercourse
which divides one county from another, the county courts of both
counties shall unite for building said bridge," is to be read in con-
nection with Sections 10744 to 10746, and when this is done it is
evident that the county has power to issue bonds to build its part
of a bridge over such dividing watercourse, which may be a
navigable river as well as a smaller stream; and when these sec-
tions, enacted in 1917, are read in connection with Sections 10520
and 10522, Revised Statutes 1909, it is further evident that the
Road Construction Fund can be used to pay a county's quota of
the cost of bridges over such watercourses.

## Mandamus.

PEREMPTORY WRIT AWARDED.

*George W. Lavelock, George Crowley, Eugene Far-
ris* and *Charles & Rutherford* for relators.

(1)   By an act of the First Extraordinary Session
of the Fifty-first General Assembly, approved August
4, 1921, Laws First Extra Session, page 133, all of Art.
II. Chap. 98, R. S. 1919, was repealed, except Sections
10896 to 10905 and Section 10907. These sections only
remain in force and effect until to and including Decem-
ber 31, 1922. It is under their provisions that the State
Highway Department can and is willing to assist La-
fayette and Ray Counties in building a bridge across the
Missouri River at Lexington, and locating a high-type,
hard-surface road from a point on the highway between
St. Louis and Kansas City through Higginsville, Lex-
ington, Richmond and on north to Hamilton, and there

connecting with the state highway from Hannibal to St. Joseph. If Ray County can sell its bonds voted, in time to make the avails thereof available for the purpose of paying, in conjunction with Lafayette County, one-half of the cost of said bridge, then the said road can be secured, otherwise it will be lost to said cities. The plans and specifications for the erection of the bridge at Lexington have been prepared and approved, and the cost thereof estimated at approximately $900,000. The proceeds of the sale of the $192,000 of bonds of Ray County are to go to paying that part of the cost of building of said bridge chargeable to Ray County, as provided by Sec. 10691, R. S. 1919. (2) Unless the proceeds of the sale of said bonds can be used for this purpose they will not be used. That they can be used for this purpose is evidenced by the language of Section 12 of Article X of the Constitution. State ex rel. Boonville v. Hackmann, 240 S. W. 135. (3) We have pleaded the suits pending in the circuit court so that the case may be determined upon a demurrer to relator's application, and to show to the court that the circuit court is without jurisdiction to hear and determine them. (4) The injunction suits pending in the circuit court are in effect election contests, and the court is without jurisdiction to determine them, for election contests are "purely creations of the statute." State ex rel. v. Hackmann, 274 Mo. 565. There is no statute providing for contesting such an election. State ex rel. Wahl v. Speer, 284 Mo. 60. (5) The election order recites the petition and finds it in proper form, and orders the election to be held and fixes the day and orders notice given in all of the newspapers published in the county. The order is sufficient. Sec. 10745, R. S. 1919. The order calling the election was published in all of the newspapers published in the county and was sufficient. Sec. 10745, R. S. 1919.

*Lawson & Hale amici curiae.*

(1) Statutes providing procedure to be followed in issuing county bonds are to be strictly construed. 15

C. J. 615; State ex rel. v. Martin, 83 Mo. App. 55. (2) The order calling the special election to vote the bonds in question, and the notice thereof, published by the Clerk of the County Court, were insufficient, because they failed to state the purpose for which the bonds were to be voted, and the amount of bonds to be issued. Sec. 10745, R. S. 1919; State ex rel. v. Hackmann, 270 Mo. 658; 15 C. J. 618; State ex rel. v. Martin, 83 Mo. App. 55; McPike v. Pen, 51 Mo. 63; Thornburg v. School Dist., 175 Mo. 12, 27; Railway Co. v. Apperson, 97 Mo. 300. (3) Proceeds of bonds voted for one purpose cannot be diverted to and used for another purpose. These bonds were voted under Article V, Chapter 98, Revised Statutes 1919, to build roads, and are about to be used for building a Missouri River bridge under Section 10691, Article IV, Chapter 98. Railway Company v. Apperson, 97 Mo. 300; Ogden v. Daviess Co., 102 U. S. 634, 26 L. Ed. 263. (4) There is no provision in our statutes to vote bonds to build the bridge proposed to be built by the Ray County Court. Section 10691 does not provide for issuing bonds in any event. Section 10698 provides for bonds to build a bridge, where, under a special statute, a city on one side of a river and a county on the other side, agree to build a joint bridge. Section 10699 also provides for a special benefit district. Those sections were passed because, as it declared in the emergency clause thereto, we had no power as the law then stood to vote bonds for such purposes. Laws 1919, pp. 638, 646. (5) If this proceeding had been instituted under Section 10691 it would not have been initiated by a petition of 200 or more tax-paying citizens, asking an election to grade, pave, etc., roads, as it was, but by the county court finding and declaring the proposed bridge to be "necessary," and proceeding thereon accordingly. Jefferson County v. St. Louis County, 113 Mo. 619, 631; 9 C. J. 436; Crow v. Oxford Twp., 119 U. S. 215, 30 L. Ed. 388. (6) All bridges constructed under the provisions of Section 10691 must be planned and the construction thereof su-

pervised by the county highway engineer or engineers, only. And no power is there given to vote bonds. Secs. 10687, 10691, R. S. 1919; Ogden v. Daviess County, 102 U. S. 634, 26 L. Ed. 263. (7) Secs. 10697 to 10702, R. S. 1919, comprise the law for building bridges over a navigable stream and are complete within themselves. The Legislature so designated this law. The caption is: "Highway Over Navigable Streams," Laws 1919, pp. 638 to 646. This is a new law, to meet a special need, which was enacted under an emergency clause. The compilers placed this law under Article IV of Chapter 98, while the proceedings in this case are under Article V, Chapter 98, and it is so stated in the proceedings. If the Legislature did not go far enough, it must act again. The court cannot legislate. (8) Construction of the proposed bridge across the Missouri River, unauthorized by a special act of Congress, and without the consent of the Secretary of War and of the Chief of Engineers, is a clear violation of law, and this court will not lend its assistance thereto. Sec. 9971, U. S. Compiled Statutes 1916; Gulf & Ry. Co. v. Meadows, 120 S. W. 521. (9) The bonds issued by Ray County state on their face (see application of relators) that they are issued "for the purpose of grading, constructing, paving and maintaining paved, gravelled, macadamized or rock roads and necessary bridges and culverts therein, and pursuant to and in full compliance with the Constitution and laws of Missouri, including among others, Article V, Chapter 98, Revised Statutes 1919." The notice of special election recites the same purpose, "as authorized by Article V, Chapter 98, Revised Statutes 1919" (see relators' application), and the order for the election says "as authorized by Article V, Chapter 98, Revised Statutes of Missouri, 1919" (see relators' application). There is no authority in such law to vote bonds for a bridge over a navigable stream, and such bonds are void. Ogden v. Daviess County, 102 U. S. 634, 26 L. Ed. 263; Art. X, sec. 20, Mo. Constitution.

DAVID E. BLAIR,—This is an original proceeding in mandamus, whereby relators seek to require the State Auditor to register one of a series of bonds issued by Ray County for the stated purpose of grading, constructing, paving or macadamizing paved, graveled, macadamized or rock roads and necessary bridges and culverts in said county, as provided in Section 10745, Revised Statutes 1919.

Respondent waived the formal issuance of our alternative writ and has filed his demurrer to the petition, which, by stipulation of parties, is taken as and for the writ. Said demurrer goes solely to the sufficiency of the petition, in that it does not state facts sufficient to entitle relators to the relief sought. The facts well pleaded in the petition are therefore taken as admitted.

Relators Patton, Bowman and Carroll are judges of the Ray County Court. Respondent is Auditor of the State of Missouri. The boundary line between Ray County and Lafayette County is the middle of the main channel of the Missouri River. The County Court of Ray County, upon petition in form not questioned here,, called a special election to vote upon a proposal to issue $192,000 of the bonds of said county. The purpose, stated in the petition, the order of the county court and the notice, followed the language used in Section 10745. A statement signed by individual members of the county court and entered of record by them is set out in the petition, from which it appears that, prior to the election, they solemnly declared it to be their intention to use the funds provided from the sale of such bonds, if authorized at such election, for the payment of Ray County's quota of the cost of a highway bridge across the Missouri River at Lexington and for no other purpose. The election was held and more than two-thirds of the votes were cast in favor of the proposition to issue such bonds. The county court made an order on September 6, 1922, authorizing the issuance of $192,000 of the road-and-bridge bonds of the county. It is not

State ex rel. Ray County v. Hackmann.

contended that this issue, added to existing indebtedness, exceeds the limit on indebtedness fixed by the Constitution.

On September 30, 1922, G. H. Pigg, and a number of other persons describing themselves as taxpayers, filed a petition in the Circuit Court of Ray County reciting the proceedings of the county court in reference to the aforesaid bond issue and the election to authorize the same, and praying that said election be declared illegal and void and for a determination by said court that said proposition did not receive the required two-thirds majority, and further praying that the judges of the county court (who are relators here) and the county clerk and county treasurer be restrained and enjoined from executing, issuing and delivering said bonds. A similar suit was filed by Arch M. Riffe and others, praying for an injunction against the county judges and county clerk and the county treasurer of said county to prevent the use of the proceeds of the bonds at said election in the construction of the bridge aforesaid.

It is alleged in relators' petition that one of said bonds was presented to the Auditor for registration, and that he refused such registration solely on the ground of the pendency of the two suits above referred to, challenging the validity of said bond issue. Counsel for plaintiffs in said injunction suits has filed brief as *amicus curiae* opposing the relief sought by relator.

I.   The want of jurisdiction of the Ray County Circuit Court to declare the election illegal on the ground that persons were permitted to vote thereat who were not legal voters and that fraud was committed at the polls by election officials in the casting up and counting of the votes has been fully settled by the decision of this court in banc in the case of State ex rel. Wahl v. Speer, 284 Mo. 45.   No provision for contesting the election to vote upon a proposition to create a county indebtedness has been provided by law. In so far, therefore, as the petitions in the injunction

Injunction.

suits attack the right of relators to issue said bonds because of anything which happened at the election itself or the counting or casting up of votes and certifying the result thereof, they afford no reason justifying the respondent in his refusal to register said bonds. Counsel who filed said injunction suits have apparently abandoned this ground of attack upon the bonds, since the question is not discussed in the brief filed here.

II.   It is alleged in substance in one or both of the petitions in the injunction suits that no legal and suf-

Order of County Court. ficient order was made by the county court calling said election and that the notice was not sufficient in form.

Among other things Section 10745, Revised Statutes 1919, provides: ''Said order and the notice of election shall state the amount of bonds to be issued and the date of the election, and that the proceeds of the bonds are to be used for the grading, construction, paving or maintaining of paved, graveled, macadamized or rock roads and necessary bridges and culverts in the county. The county clerk shall give notice of said election by causing the order providing for the election to be published once a week in four separate issues of each of two newspapers published in the county, the last insertion to be made prior to the date of said election.''

The order made by the county court on August 11, 1921, is as follows:

''In the matter of a petition requesting the county court to order an election submitting a proposition to vote bonds to construct certain roads and bridges.

''Now on this day come tax-paying citizens of Ray County, Missouri, to the number of two hundred and forty-two, and filed with the clerk of this court, and present to this court, their petition asking that the proposition be submitted to the qualified voters of the County of Ray, State of Missouri, to issue the bonds of said county to the amount of one hundred and ninety-two thousand dollars, for the purpose of grading, construc-

ting, paving or maintaining paved, graveled, macadamized or rock roads, and necessary bridges and culverts in said county, as authorized by Article V, Chapter 98, Revised Statutes of Missouri 1919; and also request that this court order a special election to be held in said county for said purpose within forty-five days after making of such order, and to determine whether or not the bonds of said county shall be issued, and sold to the amount aforesaid and not in excess thereof, and the proceeds thereof used for the purpose aforesaid. The said petition coming on to be heard, the same is seen, considered and examined, and the court finds that the said petition is signed by more than 200, to-wit, 242, of the tax-paying citizens in the County of Ray, State of Missouri, and that said petition is in due and proper form.

"It is considered and ordered by the court that a special election be held in the said county on Friday, the 8th day of September, 1922, which day is within forty-five days from this date; that said election shall be held in the same manner that general elections are held, and no person shall be permitted to vote at such election that would not be qualified to vote at a general election were such an election held on that day.

"It is further ordered that said election shall be held at the polling places in the voting precincts in said county, to-wit: Richmond No. 1, Richmond No. 2, Richmond No. 3, Richmond No. 4, Rayville, Henrietta, Sunshine, Camden, Orrick, Elkhorn, New Garden, Vibbard, Lawson, Elmira, Knoxville, Taitsville, Millville, Georgeville, Tinney's Grove, Russellville, Rockingham, Hardin and Morton.

"It is further ordered that the Clerk of this County Court shall give notice of said election by causing a certified copy of this order to be published once a week in four separate issues of the following named newspapers, to-wit: 'Richmond News,' 'Richmond Conservator,' 'Richmond Missourian,' 'Hardin News,' 'Lawson Review' and 'Orrick Times.' "

The recitals in the second paragraph of the purported order entered of record state the substance of the petition therein referred to and set forth all the things required by Section 10745 to be in said order, except the date of the election. The county court found the petition to be in due and proper form. The third paragraph of said purported order considered and ordered that "a special election be held" and fixed the date therefor as Friday, September 8, 1922, a date within forty-five days of the date of the order, as required by said section. As we gather it from the petitions filed in the Ray Circuit Court and from the brief of *amicus curiae* the contention is that the recitals in the second paragraph of the purported order are not to be considered as part of the order proper and that the county court should have specified, following the words "considered and ordered" in the third paragraph, that the purpose of the proposed bond issue, which was being voted upon at such special election, was as set forth in the second paragraph and that the proceeds of such bond issue were to be used for such purpose only.

Section 10746 requires that the proceeds of such bonds shall be paid to the county treasurer and used for the purposes set forth in Section 10745 and for no other purpose. Clearly the special election provided for in paragraph three could not possibly have been understood by any person entitled to vote at said election as being called for any other purpose than the purpose stated in paragraph two and that the proceeds of the bond issue were to be used for that purpose. The notice of election published by the clerk followed the requirements of the order and also of Section 10745, in that said order was incorporated therein. Therefore, if the order itself was sufficient, the notice was likewise sufficient. The notice was sufficiently published. The ballot as specified in the notice and as used in the election was in the exact form set out in Section 10745. Hence, the only question is the sufficiency of the order itself.

The general rule laid down in Corpus Juris is: "In submitting a proposed county bond issue to the voters, it is sufficient if there is a substantial compliance with statutory requirements as to the making of the order and the contents of the order and ballot, and if the required statements are made in general terms, without going into details." [15 C. J. 618, 619.]

The record entry made by the county court on August 11, 1922, taken as a whole, is in substantial compliance with the order required by Section 10745 and contains in substance within its four corners every material recital required to be made in a valid order. One paragraph of the record entry cannot be segregated from the whole entry and said to be the order, but the whole instrument must be read together.

Our conclusion therefore is that the order is sufficient and that there are no facts stated in the petitions in the injunction proceedings in reference to the insufficiency of such order which afford any defense to the respondent in his refusal to register the bonds.

III.   It is admitted that the only reason respondent refused to register the bonds is because of the pendency of the injunction suits in Ray County. In addition to the questions raised in the petitions in those cases touching the validity of the proceedings in calling and holding the special election and in relation to alleged fraud and misconduct of election officials, all of which we have herein before discussed, said petitions further allege that the use proposed to be made of the proceeds of said bonds was unauthorized and sought to enjoin such use.

Use of Proceeds of Bonds: To Construct Missouri River Bridge.

We might properly dispose of the case without a consideration of the use to be made of the proceeds on the ground that the use of the proceeds does not affect the validity of the bond issue, if a legal and proper purpose is stated in the proceedings, and constitutes no defense in an action to compel registration of the bonds.

[State ex rel. Clay County v. Hackmann, 270 Mo. l. c. 673.] But such disposition would still leave in said injunction cases pending in Ray County the live question of whether or not relators here can be restrained from using the proceeds to defray part of the cost of construction of the proposed bridge over the Missouri River at Lexington. The individual members of the county court are solemnly pledged to use the proceeds for no other purpose. It is apparent that the position of respondent is that the declaration of purpose signed by the members of the county court goes to the very heart of the matter and shows that the bonds are *actually issued* for a purpose other than that stated in the formal proceedings and hence the bond issue is unauthorized. It is because of this situation and because of the fact that it is of the utmost importance that this question be settled at an early date that we have concluded that the question of the subsequent use of the bonds is thus in the case for decision by us. The importance of the question in reference to the proposed Lexington bridge and other proposed bridges over the Missouri River must not be ignored by us.

The course of orderly procedure to be followed will doubtless be that the proceeds of the bond issue will be paid to the county treasurer and by him placed in the "Road Construction Fund," as required by law. The question then is: Will the county court, in accordance with the actual, declared purpose of its individual members, be authorized to use money from that fund to build or help build a bridge over a stream or watercourse, only one end of which bridge will be in Ray County?

We do not regard the question of the navigable character of the stream as being of any controlling importance. Federal consent must be secured as a matter of course. Unless such consent is secured the bridge cannot be built and in that event the proceeds could not be so used. Such consent is a mere matter of subsequent

detail, to be arranged after it is ascertained whether the construction of the bridge can be financed.

There is nothing in the language used in Sections 10745 and 10746 forbidding the use of the proceeds of bonds voted under those sections for the proposed purpose. *Amicus curiae* argues that the term "necessary bridges" means only bridges incidental to the grading, construction, paving or maintaining of paved, graveled, macadamized or rock roads, and that unless such bridges are necessary as part of the plan for carrying out the grading, construction, paving or maintaining of roads of that character, then the use of such funds for construction of bridges is unauthorized. Such is a very narrow construction indeed. But the bridge in question comes easily within even such narrow construction. Relators suggest in their brief that the State Highway Commission has designated a high-type, hard-surface road to be built across Ray County to cross the Missouri River over the proposed bridge. Whether we take judicial notice of the orders of the State Highway Commission is not important. The point is that if such road is built, it will fix the necessity for the construction of such bridge as part of the construction of the very sort of road specified in Sections 10745 and 10746. Whether the cost of construction of the road itself, apart from the bridge, is paid out of the county's road construction fund or otherwise or the work done by the State or by the county is apparently of no consequence.

Whether the "Road Construction Fund" can only be used for the construction of necessary bridges *wholly within the county* presents a more difficult question. Sections 10745 and 10746 authorize the use of money from this fund for construction of necessary bridges in the county. We take it that the question of necessity will properly be determined by the county court. Section 10691 authorizes the county court to join in the construction of a bridge over any watercourse forming a county boundary and to pay a portion of the cost to be deter-

mined by the relative assessments of the two counties. A statement of the county judges indicates that the county court will proceed under Section 10691 and obtain money from the "Road Construction Fund," provided for in Section 10746. No objection to this course of action is apparent, unless such "Road Construction Fund" can be used only for constructing bridges *wholly* within the county. Section 10691 was on the statute books before Sections 10745 and 10746 were enacted and the latter sections must be construed with reference to the former. They are not in conflict and must be construed in such a way as to give a meaning to each.

*Amicus curiae* contends that the only provision under which the voters of the county may vote bonds to build a bridge across a navigable stream is found in Sections 10697 and 10698, Revised Statutes 1919, and that the General Assembly, in enacting said sections, recognized the fact that no provision was made in Section 10691 and Sections 10744 to 10746 or elsewhere in the statutes for a county to vote bonds for such purpose. *Amicus curiae* entirely misconceives the purpose of the Laws of 1919, page 638, being said Sections 10697 *et seq.*, Revised Statutes 1919. That act was just what it purports to be, an act in relation to *highways* over navigable streams. Toll bridges restricted the use of such highways, and the Legislature was providing a means for getting rid of toll charges by authorizing the city and adjoining county to purchase the rights of the holders of the toll franchise over existing toll bridges or toll bridges in course of construction. Said act does not purport to authorize the construction of any bridge or the purchase of any bridge structure, *but only the right of way thereover.* Therefore, Section 10697 and the sections following have no bearing whatever on the question before us.

The words "any watercourse" as used in Section 10691 are widely inclusive in their meaning. The most tiny rivulet is a watercourse. So also are the mighty Mississippi and the turbulent Missouri. The words in-

clude navigable streams. The section was apparently enacted to make complete the power of the county over the construction of bridges on the theory that the county had no power, under then existing statutes, to spend money on bridges over streams unless both banks thereof were within the boundaries of the county. Section 10691 completes the scheme and provides a way to take care of streams only one bank of which lies in the given county.

Taking Sections 10744 to 10746 and Section 10691 together, there can remain no doubt of the purpose of the Legislature to authorize the use of money from the "Road Construction Fund" for bridges not wholly within the county, even if it be assumed that such power did not already exist. In authorizing the county court to unite with an adjoining county in paying the expense of constructing a bridge over a county boundary watercourse, as provided in Section 10691, the Legislature made no provision for an election. The members of the Legislature must have known a fact of such common knowledge as that general county revenues are usually depleted and that all bridges must be built from special funds. Section 10691 was enacted in 1917, and is found as Section 43 of the Laws of 1917 at page 459. When that act was passed Sections 10520, 10521 and 10522, Revised Statutes 1909, were on the statute books, and provided for the issuance and sale of county bonds to create a "Road Construction Fund" quite similar in its uses and purposes to the fund authorized by Sections 10744 to 10746, which cover the same general subject. Therefore, Section 10691 must have been enacted with a view to the effect of the provisions of Sections 10520 to 10522, Revised Statutes 1909, and that the "Road Construction Fund" created by said sections or other appropriate funds could be used to pay the county's quota of the cost of bridges over county boundary watercourses.

Nor does it appear that the funds accruing from the bond issue in question will not be used on that

portion of the proposed bridge wholly within Ray County. The bridge is estimated to cost $900,000 and Ray County's proposed portion is $192,000, or less than one-fourth of the entire cost. Of course, the entire bridge will not be in Ray County, but a part of it will be wholly within said county, and certainly as large a proportion thereof as Ray County's quota of the cost bears to the entire cost.

Our conclusion is that respondent was not justified in refusing to register the bonds because of the declared purpose of the county judges to use the proceeds in part payment of the cost of such bridge.

Some point is also made that Section 10691 cannot be relied upon as authority for the proposed use of the money because of the provisions of said section that the bridges therein provided for shall be constructed under the supervision of the County Highway Engineer and plans prepared and contract let by him, instead of the State Highway Commission, as is now proposed. It must be remembered that when Section 10691 was enacted in 1917 there was no State Highway Commission or other body with similar powers to which inter-county matters could appropriately be intrusted. Such section must be construed in connection with Article XI, Chapter 98, creating the State Highway Commission and prescribing its powers and duties. We do not deem the contention of sufficient importance to justify lengthening this opinion further by entering into an analysis of the powers and duties of the State Highway Commission to show that the exercise of the full powers of the commission necessarily raises points of conflicting authority unless pre-existing statutes are modified thereby and considered in connection therewith. We dispose of the matter as did WILLIAMS, J., in State ex rel. Clay County v. Hackmann, supra, wherein he said, at page 674:

"We may be pardoned for an expression *obiter dictum* to the effect that it would indeed be a peculiar situation if it should not be found that some one had the

295 Mo.—28

authority, at least the implied authority to see that an authorized fund was applied to the legitimate purposes of its creation, and that we anticipate little difficulty will be encountered in applying the fund to the accomplishment of this end.''

Our final conclusion is that respondent has shown no suffcient reason for refusing to register the bonds presented to him and that our peremptory writ of mandamus should issue in accordance with the prayer of relators' petition.

It is so ordered. All concur; *Walker, J.,* in separate opinion in which *Woodson, C. J.,* concurs.

WALKER, J. (concurring).—I concur in paragraphs one and two of the majority opinion and in the result. Other matters discussed are, to my mind, irrelevant. The Auditor's guide for the determination of his duty is the record of the county court. If this is found to conform to the Constitution and the statutes, affirmative action on his part in the registering of the bonds becomes obligatory. The solution of the question at issue is complete when this conclusion has been reached, as it has been in paragraphs one and two. The use to which the bonds may be put when issued is a matter of no concern to the Auditor in determining his duty nor to this court in defining the same.

We must presume that the county court will conform to the law defining its powers. Failing in this, the courts are open to restrain its action when it is contended that it has exceeded its authority. We are not confronted with that question here and hence a discussion of same is *obiter dictum. Woodson, C. J.,* concurs.