H. H. JOHNSON ET AL., Appellants, v. J. UNDERWOOD ET AL., Commissioners of PARKVILLE BENEFIT ASSESSMENT SPECIAL ROAD DISTRICT, ET AL.—24 S. W. (2d) 133.

Division One, February 3, 1930.

*Forsee & Forsee* for appellants.

*H. L. McCune, R. B. Caldwell, Blatchford Downing* and *Terrence Riley* for respondents.

ATWOOD, P. J.—This is a suit by some thirty-eight owners of land within the Parkville Benefit Assessment Special Road District of Platte County, Missouri, against the commissioners of the Road District, the County Collector, County Treasurer and the Road District itself, to set aside and cancel certain tax bills amounting to $122,142.73 upon the security of which bonds of the face amount of $102,000 were issued and sold by said road district. From an adverse judgment in the circuit court plaintiffs have appealed.

Plaintiffs' petition alleged certain preliminary matters and the ultimate levy by order of the county court dated January 16, 1924, of a special benefit assessment tax of $122,142.73, payable in fifteen installments, and the issuance of tax bills therefor against the land in the district to pay the cost of improving a certain road within the district pursuant to Section 10845, Revised Statutes 1919, as amended by First Extra Session, Laws 1921, page 173, and as supplemented by Section 10845a, Laws 1923, page 348. The petition also alleged the issuance and sale by said road district commissioners of bonds against the security of said tax bills. Alleging numerous defects in the proceeding and grounds of invalidity of the tax bills, plaintiffs prayed that said tax bills be adjudged invalid, canceled and for naught held, and the lien thereof removed as a cloud on plaintiffs' lands; that defendants be perpetually enjoined from taking any steps looking to the collection of said tax bills, and for general relief. The bondholders were not made parties to the proceeding.

Defendants went to trial on their amended answer which, after admitting the official capacity of the parties sued, denied generally the other allegations of the petition and further pleaded that the organization of the road district could not be collaterally attacked,

that plaintiffs had an opportunity for a full hearing of all matters complained of before the County Court of Platte County and the appellate courts, and as a specific plea of *res adjudicata* alleged that plaintiffs Johnson and Forsee, together with others acting in concert with and under the direction and control of the same parties directing and controlling this suit, caused the institution and prosecution to final judgment in the Platte County Circuit Court of Case No. 6187, likewise entitled H. H. Johnson et al. v. J. Underwood et al., final judgment therein being rendered April 26, 1922, in favor of defendants sustaining the validity of said proceedings. The answer further alleged that plaintiffs had also prosecuted to final judgment in the Federal court at St. Joseph, March term, 1925, another similar suit against the same defendants, involving the same controversies, in which final judgment was rendered dismissing the bill. The answer further pleaded laches and an adequate remedy at law. Plaintiffs' reply was a general denial.

The case was tried to the court without a jury in November, 1925, and taken under advisement until September 14, 1926, when a final decree was entered finding the issues in favor of defendants and holding the taxes and tax bills valid, denying plaintiffs any relief and rendering judgment accordingly. Between the date of trial and the rendition of the judgment below the stenographic notes of the testimony and possibly a part of the documentary evidence disappeared, but counsel on both sides have agreed upon a bill of exceptions.

On the threshold of this case we are met with respondents' motion to dismiss the appeal on the ground that appellants have failed to comply with our Rule 15 in their statement of the case. We have carefully examined the statement in the light of this motion and supporting suggestions and suggestions in opposition thereto and we do not believe that under our previous rulings we are justified in refusing to consider this case upon its merits. Respondents' motion to dismiss is overruled.

Preliminary to consideration of the errors alleged by appellant we note the following matters disclosed by the record: On July 3, 1916, a petition to organize a special road district in accordance with the provisions of the act of the Legislature of Missouri approved March 25, 1913, was filed with the County Court of Platte County, Missouri, and on October 2, 1916, an order was entered incorporating the district as "Parkville Benefit Assessment Special Road District, of Platte County," and appointing commissioners. Subsequently a petition was presented to said road commissioners purporting to be signed by owners of the required majority acreage within one-half mile of the road praying improvement of the road from Parkville to the southeast corner of Platte County, generally called the Park-

ville-Kansas City Road, and on July 21, 1920, said commissioners filed said petition, together with plans, specifications, estimate of costs, list of lands and valuation thereof, with the county clerk of said county. The petition prayed that the costs be paid in fifteen installments and asked that the construction be "either of concrete or a concrete base with a vitrified brick wearing surface." On September 13, 1920, the matter was heard by the county court on the petition and protest of landowners filed, and the county court found the cost of the proposed improvement to be excessive and dismissed the petition. This order of the county court was on July 5, 1921, quashed by a final judgment unappealed from in a certiorari proceeding in the Circuit Court of Platte County, and the county court was ordered to proceed as if the void judgment had not been entered therein. The commissioners thereupon refiled the petition, gave new notice, and the matter finally came on for hearing November 7, 1921, on which date the county court entered its findings and order of record levying a special tax for the aggregate amount of $385,-586.90, plus ten per cent of said sum for emergencies. On April 10, 1922, certain of the petitioners moved the court to set aside the order for an irregularity appearing upon the face of the record, in that the court rendered one judgment for the improvement of the Parkville-Kansas City Road and the Parkville-Platte City Road, whereas there should have been a separate judgment for each of said proposed improvements. On April 24, 1922, a hearing was had on this motion, public notice thereof having been given, and the court set aside its previous order because of said irregularity, and, objections and exceptions to the lists of lands and valuations therein indicated having been filed, continued the matter to May 2, 1922, on which date the court heard evidence, considered the exceptions and objections, made changes in the land lists and valuations, ordered the list so amended approved, and it further appearing that the cost of the improvement would be considerably less than that fixed by the previous order, a total tax of $261,254.07 plus ten per cent for miscellaneous expenses was duly levied in connection with the Parkville-Kansas City Road or Section B of said road district. However, this ten per cent was erroneously estimated at $2612.54, and on June 6, 1922, the court of its own motion amended this order and judgment by correcting the error in the ten per cent calculation. No appeal or other proceeding for a review was undertaken either as to the original order of May 2, 1922, or the amending order of June 6, 1922. Thereafter, on November 6, 1923, said road commissioners filed their petition in the county court representing that "the issuance of special tax bills to pay bonds heretofore issued for the improvements in said road district has for good cause been delayed for a period of over six months, and that it has been made to appear to said com-

missioners by petition and otherwise, that the estimate of the costs of said proposed improvements in Section B of said road district, is excessive and is more than is needed to pay the bonds, and interest thereon, heretofore issued and registered for said improvements,'' and praying the court to make an order authorizing the State Highway Department to make and file with said court a new and revised estimate of the cost of said improvements, and thereafter to order that the issuance of tax bills to meet the payment of bonds issued, and to be issued, be based on the new estimate so to be filed in accordance with Section 10845a, page 348, Session Acts 1923. The prayer of the petition was granted and on December 3, 1923, a new estimate of the cost of improving said road was filed. Although the bonds previously authorized had been registered they had not been delivered to the purchasers, nor had any tax bills been issued. The county court accordingly on December 8, 1923, entered an order finding that the work could be done for $106,507.89 instead of the previous amount of more than double that sum, and the aggregate special tax was levied for the amount of $111,138.92. There being errors in the calculations of the extra expenses, the court on January 16, 1924, at the same term, set aside this order because of such irregularities and entered a corrected order fixing the aggregate tax at $122,142.73. This was the final order levying the tax and ordering the road to be improved in accordance with the revised estimates. The commissioners accordingly cancelled the previously authorized but undelivered bonds, and issued and sold new bonds of the face value of $102,000 to Brown-Crummer Investment Company for $100,690.92, delivery thereof being made July 14, 1924. Said bonds thereafter and prior to the institution of this suit were sold to purchasing investors who had no actual knowledge in fact of any defects or matters of invalidity in reference to said tax assessments and bonds, if any such existed. The commissioners turned over the proceeds of these bonds to the State Highway Commission under an agreement for a refund to the extent of $6,000 per mile. Appropriate reference will be made to other matters in evidence in the course of our treatment of the errors distinctly alleged and here urged by appellants.

Under the heading ''Assignment of Errors'' appellants' brief alleges error in twenty-two separately numbered particulars. Under the heading ''Points and Authorities'' sixteen separately numbered contentions are made with authorities cited under each. This is followed by a printed argument in which thirteen separately numbered propositions are presented. Errors assigned but not otherwise presented in the brief will be treated as abandoned. [Egg Co. v. Ice & Refrigerating Co., 259 Mo. 664, 701; Compton v. Louis Rich Const. Co., 287 S. W. (Mo. Sup.) 474, 484.] There is some over-

lapping and commingling of subject-matter in the points first made and those pressed in the printed argument. We shall endeavor to consider all by following the latter and making appropriate cross-reference to the former.

The first proposition advanced in the printed argument, also covered in Paragraph XIII of points and authorities, is as follows:

"The assessment of this special tax, local in its nature, to pay for the pavement of a state highway, being a general object, and provided by law to be paid out of a general road fund, violates the Federal Constitution, 14th Amendment and State Constitution."

We have examined plaintiffs' motion for a new trial and find no suggestion of a constitutional question there. Our uniform holding has been that such a question must be raised at the earliest moment that good pleading and orderly procedure will admit and kept alive for the decision of this court. [Lohmeyer v. Cordage Co., 214 Mo. 685, 690; Ross v. Grand Pants Co., 241 Mo. 296, 299; Kircher v. Evers, 238 S. W. (Mo. Sup.) 1086; State of Oklahoma ex rel. v. National City Bank, 267 S. W. (Mo. Sup) 118, 120; Macon Co. Levee Dist. v. Goodson, 14 S. W. (2d) 561; T. J. Moss Tie Co. v. Allen, 318 Mo. 440, 443.] In conformity therewith this assignment will not be considered.

The second and third propositions argued, the latter covered by Paragraphs IV and V of appellants' points and authorities, present constitutional questions not raised in the motion for a new trial. They also, must be disregarded.

Appellants next say: "When the county court made its first order dismissing the petition, it lost all jurisdiction over the case."

This contention is included in Paragraph VI of appellants' points and authorities. We do not see how it can be sustained because the county court's power to make such an order was promptly reviewed by the Circuit Court of Platte County in a certiorari proceeding and there held wanting. No appeal was taken and the judgment there rendered settles this contention favorable to respondents.

Appellants also say: "If all the proceedings leading up to the order made May 2, 1922, were regular, the making of that order ordering the assessments to be made exhausted all the power of the county court over the case. All subsequent orders were void."

The substance of these assertions is also found in Paragraphs VI and VIII of appellants' points and authorities. While the order of May 2, 1922, confirmed the list of lands, ascertained the cost of the improvement, ordered a tax assessed, and ordered that the road be

improved, tax bills were not, in fact, issued, nor were bonds delivered for a period of more than six months thereafter. Up to 1923, while provision had been made for state and federal aid, the statutes covering road district proceedings had not been amended so that such state and federal aid could be taken into account, and it was necessary that the county court levy a tax to the full amount of the cost as estimated by the state highway engineer and approved by the court, regardless of the fact that, because of such state and federal aid, only approximately one-half of the estimated cost would have to be paid by the district. In 1923 the General Assembly passed Section 10845a (Laws 1923, p. 348), which provided in part as follows:

"Whenever the issuing of special tax bills or bonds, as herein provided, shall have been delayed for any cause for a period of at least six months subsequent to the estimate made therefor, and it shall be made to appear to the road commissioners of any such road district that the estimate of the cost of proposed improvements in said road district is excessive, or more than is needed for that purpose, they may appear before the county court at any regular or adjourned term of said court, and ask for an order of court authorizing the State Highway Department to make and file with said court a new or revised estimate of the cost of such proposed improvements, and all tax bills, or bonds issued thereafter in said road district for such improvements, shall be based upon the new or revised estimate so made and filed by said State Highway Department, less state and federal aid, if any, and shall in all respects be the legal estimate of the cost of such proposed improvements."

The emergency clause, found on page 349, also pointed out that in many instances special road district estimates had been made when prices of material and labor were excessively high and no estimates at lower figures could be obtained. The commissioners in this instance evidently availed themselves of the provisions of this act, obtained a new estimate from the state highway engineer, and on December 8, 1923, obtained a new order from the county court approving the proceedings, estimates, etc., and ordering that the road be improved in accordance with the new plans and specifications filed and assessing the tax at $111,138.92 instead of the former figure of $287,379.40. The gist of appellants' contention seems to be that because bonds had been signed and registered under the former cost estimate and tax assessment the Act of 1923 was not applicable. The language of the statute is that it applies "whenever the issuing of special tax bills or bonds . . . shall have been delayed for any cause for a period of at least six months, etc." It stands unquestioned that the tax bills had not been issued at all, and though the bonds had been signed and registered they had not been

delivered. The commissioners, therefore, simply cancelled these bonds and directed the issuance of new bonds based upon the new estimate. Their power to do so analogously appears in the following excerpt from our opinion in State ex rel. v. Taylor, 224 Mo. 393, 479:

"Counsel for relators assail all of those matters and insist that they are null and void because the court after setting aside the order of appropriation and sale of the bonds was powerless to make the second order of appropriation and for sale of the bonds.

"In our opinion that insistence is unsound. The sale of the bonds and the appropriation of the proceeds thereof to the construction of the improvements were but so many steps to be taken in the completion of the purpose of the organization; and if those steps for any reason were misdirected or rendered ineffectual, then it was clearly the duty of the court to see that they were retraced and such other steps taken within the authority of the enactment which would carry out the purposes thereof. The county court not only had the authority to issue the bonds but it was its duty to sell them for the purpose of raising the necessary means with which to construct the ditch; and if for any formal reason the bonds issued could not be sold, then, clearly, there is nothing contained in the letter or spirit of the enactment which would prevent the court from cancelling the first issue and to reissue others in lieu thereof to suit the purchasers, so long as they are embraced within the purview and object of the act. Otherwise, an unsound exercise of discretion or error of judgment on the part of the court or judges thereof in reference to the form of the bonds might thwart the entire object and purpose of the law and of the organization, even after the interested parties had been put to the trouble and expense of perfecting the latter, and that, too, without any fault upon their part.

"The power to issue the bonds in the first instance includes the power to recall and cancel them if they cannot be sold advantageously, and to reissue others in lieu thereof for the same purposes for which the first were issued, but they must, as before stated, conform to the law and be embraced within the act mentioned."

The above language and our holding in Barnes v. Construction Co., 257 Mo. 175, 195, 196, clearly indicate that the county court proceedings were continuous. The General Assembly evidently sought to provide for the accomplishment of an entire project and until this project was completed there is nothing to imply a termination of the court's jurisdiction. The new estimate enabled the court to assess a much lower tax and to that extent it was a benefit instead of an injury to the landowners. We have examined the cases cited in support of appellants' view, but do not find them in point.

The sixth proposition urged by appellants is as follows:

"When the Statewide Highway Act was passed it repealed the special road law, as to the road in question, and the order of the county court authorizing the assessment in question was nothing more than the direction of an assessment, and the issue of special tax bills to raise money as a mere gift to the statewide road fund."

The foregoing proposition is also presented in Paragraphs XI, XII and XIV of appellants' points and authorities. Paragraph XII attacks the special assessment as unconstitutional. The authorities cited under Paragraph XI and a part of the argument in support of the above proposition indicate a similar line of attack, although no such question was raised in the motion for a new trial. In accordance with our rule, to which reference has already been made, this ground will not be considered. Paragraph XIV is substantially restated in the thirteenth proposition of appellants' argument, which will be considered in this connection, and is as follows:

"By examination of said Act 1921—page 131—Laws 1921, Extra Session, we find that the road from Parkville to Platte City County line towards Kansas City, is made a part of the statewide highway system (page 158, Platte County). Sections 28 and 29 provide this road shall be 'hard surfaced by the State of Missouri,' etc. The other provision of this act gives the State Highway Commissioners autocratic, exclusive control over said road."

The record does not disclose when the road in question became a part of the state highway system, but appellants here assume that this occurred upon the passage and approval of the Centennial Road Law in 1921. In State ex rel. Liberty Township v. State Highway Commission, 315 Mo. 747, 755, 756, we thus pointed out the error of such an assumption:

"The mere passage of this act did not *ipso facto* make any particular road a part of the 'State highway system.' . . . The General Assembly in framing the Centennial Road Law in 1921 described the routes composing the 'state highway system,' but wisely refrained from locating, designating or making any road between any of the places or points named in describing the routes a part of the system. The roads were to be thereafter 'located, acquired, constructed,' etc., by the State Highway Commission and so become parts of the state highway system."

Obviously the control of this road did not pass to the State Highway Commission prior to its location and designation as a part of the highway system. Hence, the first contention in appellants' sixth proposition, also urged in Paragraph XI, that "when the Statewide Highway Act was passed it repealed the special road law, as to the road in question," is unsound. That the Act of 1921 did not

594

purport to repeal the Benefit Assessment Road District generally is further shown by its language and by the fact that the same session of the General Assembly reenacted Section 10845 of the Road District Law (Laws 1921, 1st Ex. Sess., p. 172), and in 1923 the Road District Law was supplemented by the enactment of Section 10845a (Laws 1923, p. 348).

The latter claim of appellants' sixth proposition, that "the order of the county court authorizing the assessment in question was nothing more than the direction of an assessment, and the issue of special tax bills to raise money as a mere gift to the state-wide road fund," is also without merit. Assuming that the Highway Commission would ultimately have designated the road in question as a part of the state highway system, it was only obligated to make it of properly bound gravel construction twelve feet in width and costing $6,000 a mile. [Laws 1921, 1st Ex. Sess., sec. 26, p. 144.] The road actually built is conceded to be of concrete construction, eighteen feet in width and the cost much greater per mile. How can it be said that the expenditure in question was a mere gift to the State, when the State was only obligated to build a road of less width, cheaper construction and upon what might have been a different location. It seems too plain for argument that this special road district simply availed itself of certain provisions of the Centennial Road Law looking to the extension of aid in the early construction of roads of a higher type than the Commission might otherwise see fit to build. Section 34 of the act provides:

"Any county or other civil subdivision having funds of its own arising from a road tax or bond issue may expend said funds in the building of the state road system within said county or other civil subdivision as designated in this act; provided the construction of said roads is under the supervision and according to the plans of the highway department as provided for in this act, and all money so expended by any county or other civil subdivision shall, to the extent of the apportionment of such county or other civil subdivision herein provided for, be repaid to such county or other civil subdivision, as soon as funds arising from the state road fund are available for that purpose. Requisition therefor shall be made by the county court and shall be honored by the proper officer of the state highway department."

Section 35 reads:

"If any county, civil subdivision or persons interested desire a road of a higher type, more expensive construction, or better in any way than the road proposed by the department, and shall secure to the State, in the manner and within the time prescribed by the commission, the additional cost of such road, then such road shall be

constructed with the funds of the State and funds so secured; provided, however, that the road shall be constructed under the supervision and direction of the commission, as provided for herein, for the construction of roads at the sole cost of the State.''

Section 3 of the act defines ''civil subdivisions'' as including road districts. The Legislature evidently intended that the state highway system of roads should be built as expeditiously as possible and that local districts might, if they saw fit, obtain a higher type of road than the Commission was obligated to build by contributing to the cost, provided, at all times the same was under the supervision and control of the Highway Commission. Above Sections 34 and 35 clearly indicate that the power of civil subdivisions to raise funds for construction should be continued, utilized and taken advantage of and not abolished. There is nothing in the record to show what type of road the Commission would have built had not this contribution been made. Since Section 34 provides for refund to the extent of apportionment, and the agreement for refund was for $6000 a mile, it may be inferred that this was not to be a primary road and might have been only a gravel road, twelve feet in width, costing $6000 a mile.

As against the express provisions and clearly indicated policy of the Centennial Road Law, above noted, appellants mainly rely upon the case of Platte City Benefit Assessment Special Road District v. Couch, 320 Mo. 489, 8 S. W. (2d) 1003. We think it is clearly distinguishable. The controlling feature there was the conceded fact that the road built by the State Highway Commission, and upon which money arising from taxes levied by special assessment was expended, was constructed upon a substantially different location from that designated in the proceedings pursuant to which the special tax bills were issued. In the instant case the road upon which the proceeds of the bonds were expended was in every respect the identical road for the construction of which the special taxes were assessed and the tax bills issued. Furthermore, the opinion expressly states that Sections 33, 34 and 35 of the Centennial Road Law ''cover situations in which money raised by these local units (that is, counties and civil subdivisions) might be used in the construction of state highways.'' The holding was that these sections did not authorize the diversion of funds raised by special assessment for one purpose and their application to another. We think the present case is ruled as to this point by our decision in State ex rel. Liberty Township v. State Highway Commission, 315 Mo. 747, where under circumstances falling within the provisions of Section 33 of this act we held that proceeds of a township road bond issue were properly turned over to the State Highway Commission for expenditure in road construc-

596

tion. It should also be noted that in the Couch case no bonds had been issued against the tax bills, and the opinion necessarily distinguishes a case such as this, where bonds have been issued on the security of the tax bills, when it refers to Rose v. Springfield, etc., Road Dist., 275 Mo. 590, 205 S. W. 54; State ex rel. Carter v. Hamilton, 94 Mo. 544-550, 7 S. W. 583; and H. & St. J. Railroad Co. v. Marion County, 36 Mo. 294, 306. If the disposition of the proceeds of the sale of the bonds in this case be said to affect the validity of the bonds or the tax bills upon the security of which they were issued, such contention should be ruled against appellants on the principles announced in State ex rel. Ray County v. Hackmann, 295 Mo. 417.

Appellants' seventh proposition is: "This action is a direct attack on the judgment or order of the county court." This is a reiteration of Paragraph I of their points and authorities. As to matters finally put in issue and presented on this appeal it need not here be questioned.

Appellants' eighth proposition is not raised in appellants' points and authorities and under our Rule 15 should not be considered.

Appellants' ninth proposition, also covered by Paragraph VII of their points and authorities, is as follows:

"The plaintiffs in this case had the right to prove that the petition to improve the road had been unlawfully signed by the Board of Trustees of Park College and by Day and Tucker, regardless of the finding of the county court, for the following reasons:

"(a) The resolution of said board did not mention the road that was to be paved.

"(b) The charter of the college prohibited such a signing.

"(c) The trust deed to Day and Tucker did not authorize them to sign such a petition."

We shall treat these objections in the order presented.

(a) No such resolution of the Board of Trustees of Park College is preserved in the record. Its absence may be accounted for by the fact, already observed, that the shorthand notes and possibly some of the exhibits in the case were lost. However, the following minute of the Executive Committee dated February 19, 1919, does appear:

"H. B. Mann as president of the board was authorized to sign petition for hard-surfaced road from the Clay County line to the north line of the Parkville Road District."

The following report was also made by the Executive Committee at the annual meeting of the Board of Trustees of Park College under date of June 4, 1919, and by said Board of Trustees adopted:

"The committee has acted for the board in connection with plans for building a hard-surfaced road between Parkville and Kansas City, signing the petition for college acreage within the district and encouraging the enterprise in every possible way."

Counsel for appellants do not elaborate or further press this point and we deem these references to the road in question sufficient.

(b) We do not think our language in Trustees of Park College v. Attorney-General, 228 Mo. 514, 523 *et seq.*, with reference to the college charter, should be given the construction placed upon it by appellants, but they are in no position to raise the question of *ultra vires*. This defense can only be raised by the State. Furthermore, the college secretary, Mr. Knight, testified that the college had paid and had ample funds to continue to pay these tax assessments without impairing the properties held in trust by the corporation.

(c) As for the signatures of James P. Tucker and George W. Day, trustees under the will of Elzie Fulton, they were properly on the petition. The paragraph of the will creating the trust is in general terms with no express limitations on the powers of the trustees. On the contrary, one clause provides that "said trustees are hereby authorized to sell and convey any of the property coming to them under this trust, or to perform any other act with reference thereto for the purpose of carrying into effect the provisions of this paragraph."

Section 10848, Revised Statutes 1919, being part of this special road district law, also provides in part as follows:

". . . or if any land shall have been conveyed or devised to a trustee to be held by him for the use or benefit of another for a number of years or during the life of such other, the trustee . . . shall be deemed and held to be the owner of such land within the meaning of this section."

Proposition nine is, therefore, ruled against appellants.

Appellants' tenth proposition, also covered in Paragraph IX of their points and authorities, reads as follows:

"The orders of the county court, setting aside its former orders after the term in which the previous orders had been made, were *coram non judice*, and null and void."

The general rule is that the court cannot at a subsequent term set aside or amend an order made at a prior term. However, Section 1552, Revised Statutes 1919, expressly authorizes courts of record to set aside at any time within three years orders which show irregularities on their face. A county court is a court of record. [Sec. 2323, R. S. 1919; State ex rel. v. Souders, 69 Mo. App. l. c. 473.] A full discussion of this statutory power appears in Stulz v. Lentin, 295 S. W. 487, 489. See also, Reed Brothers v. Nicholson, 93 Mo. App. l. c. 34; and Boggess v. Jordan, 283 S. W. 57. Applying this statute to the orders here in question we find that the county court, following the judgment in certiorari in the circuit court of July 5, 1921, which quashed the county

court's previous order of September 13, 1920, and ordered the county court to proceed with the cause, entered an order on November 7, 1921, approving the projects, estimating the costs and levying the tax. This order, however, combined in one decree two éntirely separate and distinct proceedings, one relating to the road from Parkville to Platte City designated as Project A, and the other from Parkville to Kansas City designated as Project B. A decree rendering judgment for the improvement of two distinct projects is not responsive to a petition for the improvement of one project, and hence the order was irregular on its face. Accordingly, the motion of April 10, 1922, to set aside this order of November 7, 1921, being filed within three years was timely and the judgment of April 4, 1922, setting aside the judgment of November 7, 1921, was therefore valid. This judgment continued the cause to May 2, 1922, upon which date the court rendered a correct judgment separating the two projects. On June 6, 1922, and at the same term, the court of its own motion corrected this order. The order and decree of December 8, 1923, based upon a reduced cost estimate, was expressly authorized as a new order by the terms of Section 10845a, Laws 1923, p. 348. The validity of this order has already been discussed and sustained in this opinion. The record of the county court shows that the new cost estimate was filed December 3, 1923, at the November term. The order of January 16, 1924, likewise shows that it was made at the same term and was, therefore, within time to correct prior erroneous orders made at the same term. This is the final order under which the tax bills here in controversy were issued. Proposition ten is also ruled against appellants.

Appellants' eleventh proposition, covered in Paragraph VIII of their points and authorities, is as follows:

"Section 10845-A, Laws 1923 (Mo.), did not authorize the county court in this case to order a new estimate based upon which it made the order of January 16, 1924, for the following reasons:

"(a) That section authorizes new estimates 'whenever the issuing of special tax bills, or bonds, as herein provided, shall have been delayed,' etc.

"(b) The court had lost all jurisdiction over the subject-matter and parties prior to said date.

"(c) The section could not have a retroactive effect."

In suggestion (a) counsel for appellants evidently overlook the fact that at the time this new estimate was made the bonds had not been delivered and hence their issuance was not complete. Suggestion (b) has already been considered and overruled in this opinion. We set no point to suggestion (c) nor does it seem to be seriously pressed.

Appellants' twelfth proposition, also covered in Paragraph X of their points and authorities, reads as follows:

"The last order of the county court made January 16, 1924, directed that the road should be improved according to the plans and specifications then on file."

Counsel for appellants say there were two sets of plans and specifications on file, and that the order is, therefore, void for failure to state which set was to be used. The orders of the county court expressly recite the filing of new and revised estimates of cost from time to time. See orders of November 6, 1923, December 8, 1923, and especially the final order of January 16, 1924. Also Plaintiffs' Exhibit 4 shows that as early as July 26, 1921, the estimates were for a concrete surface. In view of these orders it seems clear that the succeeding orders authorizing the improvement referred to the last preceding specifications filed.

In Paragraph III of their points and authorities, not separately urged in their printed argument, appellants say that "failure of the petition of the property owners petitioning for the improvement to contain the allegation required by the law that the petitioners desired the costs to be taxed against the lands in the district vitiated the entire proceedings." The petition was expressly addressed to the commissioners of a "Benefit Assessment Special Road District," and it contained an express request that the cost of the improvement be payable in fifteen installments. These and other recitals in the petition itself charged the signers with knowledge of the nature of the proceeding. It further appears that no one was misled. The point is ruled against appellants. [Mustin v. Brain, 204 S. W. (Ark.) 621; State ex rel. v. Gordon, 260 Mo. 145, 152; State ex rel. Ray County v. Hackmann, 295 Mo. 417, 428.]

Other propositions discussed in briefs filed are not deemed necessary to a determination of this appeal. No reversible error appearing the judgment is affirmed. All concur.

## On Motion for Rehearing.

In their motion for rehearing counsel for appellants say that we have failed to discuss certain vital questions properly before us on this appeal, and in their suggestions say that many suits on these tax bills are "being held in the Circuit Court of Platte County until this court determines the points involved in this case." In the light of this information we have indulged the filing of supplemental suggestions in support of the motion for rehearing.

Counsel for appellants now say that point numbered IV under their head of Points and Authorities presented two points, namely, that the alleged omission was a fatal error, and that in such case enforcement of the tax bills against lands that were listed is a violation of the federal and state constitutions. Point IV is as follows:

"The failure to list and assess, as the law requires, all the lands in the district is a fatal error, and the enforcement of the tax bills against the lands that were listed for that portion of the tax that the unlisted property should have borne, is a violation of the 14th Amendment of the Constitution of the United States, as well as the similar provision of the State Constitution, and renders the tax bills void."

If Point IV does in fact present two points it violates our Rule 15 which requires "a statement, in numerical order, of the points relied on," etc.

Counsel concede that the constitutional question was not raised in the motion for a new trial, but assert that the other alleged question was raised by the eleventh ground of the motion, which is as follows:

"Under the law and the evidence in this case the finding and judgment should have been for plaintiffs."

Counsel for appellants also say that the same question was raised by Points V and XV which are as follows:

"V. The order of the county court defining the boundaries of the district and the land list were parts of the record of the case. The list showed on its face when compared with the said order that four tracts of 40 acres each had been omitted—the Wingo & Herndon lands—hence the approval of the land list by the County Court must yield to the record, the list itself and said order. The approval was a 'legal fraud.'

"XV. The statutes providing for the improvement and the issuance of tax bills therefor were not followed; therefore, both the assessment and tax bills are invalid."

Point XV does not raise the question unless it is read in connection with and as a part of Point V, and, despite appellants' assertion to the contrary, we think this question is not presented in their brief and argument except by way of a repetition in substance of appellant's Point IV appearing in paragraph numbered 3. However, though imperfectly presented, we think consideration of this question is not barred under a liberal interpretation of our Rule 15. But, was any such question presented by the eleventh ground of the motion for a new trial? In reviewing the record in an equity suit (Maplegreen Co. v. Trust Co., 237 Mo. 350, 363, 141 S. W. 621), LAMM, J., speaking for this court in banc said that "the office of a motion for a new trial is to gather together those rulings complained of as erroneous and solemnly and formally present them, one by one, in black and white, to the judge, in order that he have a last chance to correct his own errors without the delay, expense or other hardships of an appeal. This, on the theory that even a judge is entitled to a last chance—a *locus poenitentiae*." The eleventh ground of the

motion did not advise the chancellor of the particular issue now said to have been erroneously decided. Hence, he was given no opportunity to correct his own error, if such there was. If plaintiff's counsel were unwilling or unable to specify the issue then why should they be permitted to convict, by ambuscade as it were, the chancellor of error on that issue now? To hold that a ground of error couched in the most general terms is sufficient to keep alive every subsequently specified error that can be herded within its possible bounds is to ignore an important and well recognized "office" of a motion for a new trial. This situation is unlike that presented in Brook v. Barker, 287 Mo. 13, 17, 228 S. W. 805, where the sole assignment of error in the motion for a new trial that "the verdict rendered by the jury is unsupported by any evidence," was held sufficient on appeal from order of court sustaining motion for a new trial. Neither does this situation come within the scope of our ruling in Wampler v. Railroad, 269 Mo. 464, 483, 190 S. W. 908, and similar decisions. We are constrained to hold that the above question which appellants would now have us consider was not raised by the motion for a new trial, and is not before us for consideration.

Other questions presented in the motion for a rehearing are adequately dealt with in our main opinion. All concur.