MAPLEGREEN REALTY COMPANY v. MISSISSIPPI VALLEY TRUST COMPANY, Appellant.

In Banc, November 27, 1911.

1. **APPEAL: Matters Reviewable: Overruling Exception to Referee's Report: Not Ground for New Trial.** Error of the chancellor in overruling defendant's exceptions to the referee's report is not for review on apeal where there is no ground in the motion for a new trial directed to error in overruling such exceptions.

Maplegreen Co. v. Trust Co.

2. ———: ———: **Findings of Referee: Evidence Not Preserved.** Where the appellant omits the evidence taken before the referee from its bill of exceptions, the court cannot review the findings of the referee based thereon, even though appellant accepts the referee's findings of facts. [VALLIANT, C. J., and WOODSON, J., dissenting.]

3. ———: ———: **Equity: Deference to Chancellor.** Appellate courts approach the facts in an equity case by allowing to the trial chancellor (in this case his referee) the primary advantage of the use of eye and ear in discovering the truth in the testimony of witnesses and in stamping that testimony with its earned and deserved percentage of weight and credit. Subject to that deference, an equity case is to be heard *de novo* on appeal. But to be heard *de novo* the evidence must be preserved in a bill of exceptions, and if not so preserved the referee's conclusions, although the facts found be accepted by the appellant as true, cannot be reviewed. [VALLIANT, C. J., and WOODSON, J., dissenting.]

4. ———: ———: **Motion for New Trial: No Assignment Therein.** The motion for a new trial fills a substantial and useful office in administering justice. Primarily it is designed to give the trial court an opportunity to correct errors committed in the course of the trial. But it also has come to be the office of that motion to preserve, fix and designate errors to be reviewed on appeal. Where there is no assignment in the motion of an error complained of on appeal, that error cannot be reviewed. The motion must be held to mark out the matters to be reviewed. Where there is no assignment in the motion that the court erred in overruling appellant's exceptions to the referee's report, whether or not the court's ruling on those exceptions was error cannot be reviewed or determined; and assignments directed only to the "verdict," the "declarations of law," the "damages," the "demurrer to the evidence" cannot be held to refer to exceptions to the referee's report.

5. ———: ———: **Motion in Arrest: Exceptions.** The office of a motion in arrest is not to strike at matters of mere exception. That is the office of a motion for a new trial. An assignment in the motion in arrest that "upon the record said judgment is erroneous" is not sufficient to preserve for review errors of the chancellor in ruling on appellant's exceptions to the referee's report.

Appeal from St. Louis City Circuit Court.—*Hon. Daniel G. Taylor*, Judge.

AFFIRMED.

*E. M. Grossman* and *Jones, Jones, Hocker & Davis* for appellant.

*Kinealy & Kinealy* for respondent.

(1) The action of the circuit court in overruling defendant's exceptions to the report of the referee is not open for review by this court because defendant did not in its motion for a new trial complain of that action of the trial court. State ex rel. v. Hurlstone, 92 Mo. 327; Arkansas Land Co. v. Ladd, 103 Mo. App. 83; Bosley v. Cook, 85 Mo. App. 422. (2) Exceptions to a referee's report, and necessarily therefore a motion for a new trial in such cases, must specifically and definitely point out the alleged error or matter complained of. Wiggins Ferry Co. v. Railroad, 73 Mo. 389; Singer Mfg. Co. v. Givens, 35 Mo. App. 602; Dallas v. Brown, 60 Mo. App. 493; Cahill v. McCormish, 74 Mo. App. 609; State v. Scott, 214 Mo. 257. (3) As defendant has not undertaken to abstract the evidence before the referee, no exception to the referee's report or ground for a new trial, based upon the evidence, can be reviewed by this court. Reed v. Peck, 163 Mo. 336; Plumbing Co. v. Brewing Co., 126 Mo. App. 270; Furstenfeld v. Furstenfeld, 131 S. W. 361.

*H. S. Priest* for appellant in reply.

Inasmuch as we do not challenge the correctness of the referee's report as to facts, the testimony taken before him is of no importance and would be an useless encumbrance upon the record. The office of a motion for new trial is to call the attention to supposed errors during the progress of the trial, that is, the investigation of the facts in issue. Crossland v. Admire, 118 Mo. 87; Ewald v. Young, 119 Mo. App. 485; R. S. 1909, sec. 2022. Is there of the quoted assignments of cause in the motion for new trial sufficient to call

to the attention of the court below the errors here complained of in the referee's report? We repeat them: "The verdict is for the wrong party"; and "The referee erred in his declaration of law." Closely coupled with these two assignments of error are two others which, in association, draw the attention of the court to the position of the appellant in this court on the merits of the controversy. They are these: "The court erred in overruling the demurrer to the evidence offered at the close of plaintiff's case"; and "The referee erred in overruling the demurrer to the evidence at the close of plaintiff's case." Words take color and meaning by textual association and in the presence of things discussed. A verdict technically means the pronouncement of a jury upon the facts of a case. In a generic and more common meaning, it means the expression of an opinion upon a submission. There was no trial by jury in this case. The court, of its own motion and against the exception of the defendant, referred the case for the ascertainment of both law and fact. The report of the referee was a verdict upon facts and a declaration of his views of the law, which the court confirmed upon a consideration of exceptions to the report. The court below could not have understood the verdict mentioned in the assignments of the motion for a new trial as referring to anything except the report of the referee. He could not have understood "declaration of law" to have reference to anything except the conclusions of law ascertained by the referee as applicable to the facts which the referee found. Hence the court below could not have been misled or deceived or uninformed as to the propositions which these assignments were meant to cover and did cover. McCullagh v. Allen, 10 Kan. 150; Morgan v. Keller, 194 Mo. 677. There is very good authority for calling the report of the referee a verdict. It has time and again been likened to a special verdict by this court

(Howard County v. Baker, 119 Mo. 397), and is given by express legislative enactment the same force and effect as a "special verdict." R. S. 1909, sec. 2013. (2)    But if no exceptions had been filed and no motion for new trial had been filed; if the undisputed facts as found by the referee were not sufficient in law to support the judgment, appellant is entitled to a reversal. The "record proper" consists of the pleadings, the verdict and the judgment. Nicol v. Hyre, 58 Mo. App. 134; Railroad v. Carlisle, 94 Mo. 166. The verdict and judgment are a part of the "record proper," and this court may consider without motion for new trial errors that there appear. The statute says (Sec. 2013) if the report of a referee be confirmed "judgment shall be rendered thereon in the same manner and with like effect as upon a special verdict." It is thus adopted as a special verdict and must support the judgment as would the verdict of a jury. It is a part of the record proper, and if like the petition, does not support the judgment, or, like the major or minor premise of a syllogism does not support the conclusion, it is erroneous and fallacious and cannot stand. The judgment is "rendered in the same manner" and "with like effect" as upon a special verdict. In both form and effect under this law, it must be treated as a special verdict. A special verdict is one where all the facts, as the jury finds them to be proved, are reported and the jury pray the advice of the court thereon conditionally, that if, upon the facts reported as a matter of law, the court should be of the opinion the plaintiff had a cause of action, then they find for the plaintiff; if otherwise, for the defendant. Statler v. United States, 157 U. S. 277. Our statute concerning references does not seem to contemplate that the referee shall do more than find the facts, thus meeting entirely the definition of special verdicts. The court has time and again held that the report of the referee appointed by consent has the standing of a special

verdict. Wiggins v. Railroad, 73 Mo. 389; Vogt v. Butler, 105 Mo. 479. While the referee's findings of facts are conclusive, where there is substantial evidence to support them, his conclusions of law may be rejected and the law properly applied to the found or conceded facts. Wiggins Ferry Co. v. Railroad, 73 Mo. 389; Gamble v. Gibson, 83 Mo. 290; Lingenfelder v. Brewing Co., 103 Mo. 578. So that it must be conceded in a suit at law or in equity that the referee's report under our statutes stands as a special verdict and constitutes a part of a record, and if the conclusions of law applicable to the findings of fact are incorrectly applied in the report that this error would be corrected on appeal, because the report is a part of the record proper, and is subject to review as would a petition which failed to state a cause of action. This rule has been applied by this court in a variety of ways from a very early date. Shore v. Coons, 24 Mo. 556; Land Co. v. Bretz, 125 Mo. 422; Bower v. Daniel, 198 Mo. 318. In the case at bar, in passing we observe that both parties have agreed, by statements made in their briefs and abstracts, that the referee's finding of facts is correct, and such agreement gives the report the force and effect of an agreed statement. Land Co. v. Bretz, 125 Mo. 418; Bower v. Daniel, supra. Fitzpatrick v. Weber, 168 Mo. 572; Daggs v. Smith, 193 Mo. 501. It seems to us a work of supererogation to continue the citation of authorities upon this proposition. The following authorities support the proposition that the referee's report which is erroneous on its face will be reversed upon appeal, although no exception thereto or motion for new trial was filed by the aggrieved party, and this upon the theory that the report of the referee stands as a special verdict under the statute and constitutes a part of the record proper. Land Co. v. Bretz, 125 Mo. 418; Blount v. Spratt, 113 Mo. 54; Shore v. Coons, 24 Mo. 556; Daggs v. Smith, 193 Mo. 500; Fitzpatrick v. Weber, 168 Mo. 572; Leavitt v.

Taylor, 163 Mo. 169; Hughes v. Ewing, 162 Mo. 294; Bower v. Daniels, 198 Mo. 318; Gillett v. Trust Co., 82 N. E. 908; Bank v. Nickell, 49 S. E. 1003, 1005; In re Garrison v. Trust Co., 77 Mo. App. 337; Foster v. Mackey, 4 Mo. App. 590; Wade v. Peacock, 49 S. E. 826. Daggs v. Smith, 193 Mo. 501.

LAMM, J.—Suit in equity for accounting; issues joined by answer and reply; a reference below; a report by the referee; exceptions by defendant overruled; and judgment for plaintiff for $8,494.86. Defendant appeals.

There is a cross-appeal by plaintiff from a judgment in favor of defendant on certain items. Such cross-appeal has been briefed as a separate appeal. It will be convenient to preserve that method of consideration here. Accordingly, it will be determined in a separate opinion.

The bill runs on the theory that plaintiff owned "a subdivision," known as Greenwood, part in the city and part in the county of St. Louis; that defendant had a real estate department and plaintiff, desirous to sell its lots, in April, 1904, appointed defendant its agent to sell and receive payment; that defendant accepted such appointment and thereunder sold many lots and collected much money, which it had refused on demand to account for. Relief was prayed that defendant be required to furnish a statement and account of all such money, etc.; that an account be taken between plaintiff and defendant; that plaintiff have judgment for the amount so found due; and for such further relief as may be equitable and just.

An amended answer was accompanied by exhibits purporting to be an account between defendant and plaintiff on lot sales, receipts, expenses, expenditures and payments. The accounts are intricate and long, they would but cumber the opinion if set forth.

Shortly stated, the amended answer runs on the theory that defendant, by contract between it and one Syrett, who acted for plaintiff, for a compensation of five per cent on sales made by itself (or anyone else) of lots in said Greenwood, agreed to permit the use of its name and facilities to advertise and actively aid said Syrett (he being the sale and collecting agent and manager of plaintiff and sole active officer in charge of its affairs), to sell said lots, he, Syrett, to retain management and control of such sales as plaintiff's agent— said arrangement to last for one year. Collections were made by Syrett and by defendant on sales during that period, and expenses incurred by defendant; that defendant either turned over to Syrett as agent for plaintiff or permitted him to retain the proceeds of lots, it thereby accounting to him as plaintiff's secretary, treasurer and agent and relieving itself from liability; that Syrett (acting with the approval and authority of plaintiff) had access to defendant's books, knew the state of the accounts by daily inspection and knew the correctness thereof and was the only officer of plaintiff with whom defendant came in contact; that Syrett departed from St. Louis about February, 1905, and that plaintiff is estopped from requiring of defendant any further accounting of disbursements and receipts down to date (said account being appended in two exhibits); that afterwards defendant received from various purchasers of lots payments down to April 4, 1905, (shown by another exhibit); that certain commissions were due and expenditures had been made, for which defendant was entitled to credit (the items of which appear in another exhibit), leaving a balance due defendant of $930.36.

A reply, in the nature of surcharging and falsifying said accounts, came in, which also denied new matter.

It seems Syrett was at all times secretary and treasurer of plaintiff; that he was at one time lot sales agent of plaintiff and was actively in control of its

business affairs.  While things were in this fix defendant also employed him in that branch of its real estate department having charge of sales of lots in certain subdivisions.  It seems that at the time of that employment, through a contract made by him, defendant became the agent of plaintiff in and about the sale of lots in Greenwood and in making collection on lot sales—the scope of the agency being in dispute and the scope of Syrett's agency for both his principals being also in dispute.  On mutual contentions arising from these complicated, overlapping and dual relations, the suit is prosecuted and defended.  Syrett received certain moneys.  There is a disagreement whether he received them as plaintiff's agent or as defendant's agent.  Defendant received other moneys and asks an acquittance therefor because it claims they came actually or potentially into Syrett's hands as secretary and treasurer of plaintiff.  Syrett kept or supervised defendant's books of account concerning its transactions in Greenwood lots.  He also kept plaintiff's books.  Apparently he served two masters, was unfaithful to both and became an absconding defaulter.

The question is:  Where shall the loss fall?

The referee submitted to the chancellor the evidence taken (we infer in great volume) together with his report—a document of 128 pages of print, which includes his findings of fact and conclusions predicated thereon, covering a multitude of detail, viz.:  Each lot sale, the purchaser thereof, the earnest money and subsequent payments thereon, the expenditures of defendant, a resume of the pleadings, the referee's view of the relationship of the parties litigant to each other and to Syrett during the life of the agency, an outline of the plan adopted in lot sales for receiving payments, making deeds and bookkeeping on all sides. The fullness and perspicuity of his report bespeak for him the praise due to industry, pains and learning.

To that report when filed many written exceptions were made in due time. It was withdrawn on the same day and refiled on the next. To it as refiled, an array of exceptions were made, first and last, over a hundred. Those exceptions were heard by the chancellor and overruled, and judgment went in accordance with the recommendation and finding of the referee. Defendant duly excepted to overruling its exceptions.

The bill of exceptions contained the following:

"(Inasmuch as appellant accepts the referee's findings of fact, it feels there is no occasion for abstracting any evidence excepting that which pertains to the reason for amending its answer and for asking for the return to it of the tender theretofore made and for a judgment against plaintiff.)"

(*Nota bene*: The testimony pertaining to the amendment of the answer and reasons for asking return of a $200 tender made by defendant to cover costs accrued and $77 admitted to be due on the state of accounts shown by the exhibits to the first answer, is not pertinent to the merits or to any controlling issue in the case, hence will be omitted.)

The motions for a new trial and in arrest are reproduced *ipsissimis verbis*.

The first reads:

"Now comes the above-named defendant and moves the court to set aside the verdict rendered and the judgment and decree entered thereon in this case, and to grant it a new trial therein for the following reasons:

"1st. The verdict is against the evidence.

"2nd. The verdict is against the weight of evidence.

"3rd. The verdict is against the law under the evidence.

"4th. The verdict is against the law as declared in the declarations of law given by the referee.

"5th.   The verdict is against the law as declared in the declarations of law given by the court.

"6th.   The verdict is for the wrong party.

"7th.   The court erred in admitting incompetent, irrelevant and immaterial evidence offered by the plaintiff.

"8th.   The referee erred in admitting incompetent, irrelevant and immaterial evidence offered by the plaintiff.

"9th.   The court erred in excluding competent, relevant and material evidence offered by defendant.

"10th.   The referee erred in excluding competent, relevant and material evidence offered by defendant.

"11th.   The court erred in overruling the demurrer to the evidence offered at the close of the plaintiff's case.

"12th.   The referee erred in overruling the demurrer to the evidence offered at the close of the plaintiff's case.

"13th.   The court erred in its declarations of law.

"14th.   The referee erred in his declarations of law.

"15th.   The damages assessed by the court are excessive.

"16th.   The damages assessed by the referee, are excessive."

The second reads:

"Now comes the defendant herein and moves the court to arrest the judgment in this cause for the reasons:

"1st.   That upon the record said judgment is erroneous.

"2nd.   That the petition does not state facts sufficient to constitute a cause of action against defendant.

"3rd.   The verdict is not responsive to the issues made by the pleadings."

Learned counsel for defendant argue that the conclusions of the referee were wrong on the facts found by him; that the court erred in overruling the exceptions to his report and in entering a decree in accordance with the referee's recommendation.

But, even at first glance, it is apparent there is a serious question confronting us, *in limine,* viz.:

On the record here, are we at liberty to review the findings of the referee or the rulings of the court on the exceptions to those findings? More precisely put, if the chancellor erred in overruling defendant's exceptions to the referee's report, is that error (according to accepted rules of practice) here for review, absent a ground in the motion for a new trial directed to error in overruling such exceptions?

To that question, we address ourselves.

(a). The rule is that appellate courts approach the facts in an equity case by allowing to the trial chancellor (in this case his referee) the primary advantage of a personal factor, or equation, viz., the actual use of eye and ear in discerning the truth of witnesses (eye and ear filling a prime office in that regard) and in stamping testimony with its earned and deserved percentage of weight and credit. The upper may well defer to the lower court in that particular. Subject to that modification, an equity case is heard *de novo* on appeal. Therefore, if it can not be heard *de novo* in all that term implies—*i. e.,* in very deed and truth—it should not be heard at all on appeal. Peradventure, to do nothing is wiser than to do something and not have the information, the wherewithal, to do right. A clock that stands still is right at least *twice* a day. A clock that runs but lamely, may *never* tell the truth.

Assuming such premises, the accepted doctrine has come to be in this jurisdiction that we will not reverse a decree merely because the conclusion of the chancellor on facts found by him in his decree seems

to be a *non sequitur*.  Our duty on review in such case is to seek equity in the light of all the evidence and do it by rendering to every man his due.  To that end the evidence must be brought here if a litigant seeks •to disturb the decree below on any question short of jurisdiction.  [Pitts v. Pitts, 201 Mo. l. c. 359, *et seq.*, and cases cited; among them, Patterson v. Patterson, 200 Mo. 335, which deals satisfactorily with the philosophy of the thing.]  The mere facts found by a chancellor, absent the testimony on which those findings stand or fall, are in the nature of advice to this court.  So, the findings of fact by a jury are advisory to the under court in an equity suit.  So, the findings of a referee are of the same character and fill the same office below and here.  None of them, in the absence of the testimony (which latter is essential matter in discerning the justice of a cause) would warrant our interference with the decree so long as the court had jurisdiction of the person and subject-matter.  A court of conscience may indeed speak and act but it must *hear* before it does either.  Now to "hear" and decide the merits of a case in equity, without the testimony, is a solecism.

Accordingly, in this case, when defendant elected to omit the testimony taken by the referee from its bill of exceptions, it did more than its learned counsel intended to do, for it also elected by that same token to make it improper for us to review the findings of the referee or suspend, reverse or alter the decree based on such findings.

(b).  A motion for a new trial, in the system now in vogue, fills a substantial and useful office in administering justice through the courts.  Questions are suddenly sprung on a trial judge by versatile and ingenious counsel during the hotfoot of a trial, which he perforce must decide without taking time to consider.  No mortal judge is allowed to be so incomparably recondite and ready as to know all the law all the time.  If he

know all the law some of the time, or some of the law all the time, or some of the law some of the time (thereby putting himself outside of the class of those who know none of the law none of the time), he rises to a permissible high-water mark of excellence. Accordingly, the office of a motion for a new trial is to gather together those rulings complained of as erroneous and solemnly and formally present them, one by one, in black and white, to the judge, in order that he have a last chance to correct his own errors without the delay, expense or other hardships of an appeal. This, on the theory that even a judge is entitled to a last chance—a *locus poenitentiae.*

Furthermore, the office of that motion has come to be to preserve and fix errors to be reviewed in the record, to mark them for review, by another ruling on the motion itself, on which, when exception is taken and preserved, the whole matter is brought up for correction. We are not saying this is the best plan that might be devised. What we say is that it is the only plan now known to the law, and to which all litigants must conform, until the law is changed and its learning on that head is consigned to the dustheap. Accordingly, it is the settled doctrine of the law that a litigant heading up to a court of review, on matter of mere exception, might as well take no step at all as to omit to take the last and vital step of filing a motion for a new trial, or, if he file one, not to file a good one.

In framing issues here or below the law delighteth in reasonable precision. Accordingly, it applies the maxims: To speak insufficiently is the same as to say nothing. (*Idem est nihil dicere*, etc.) Not to exist and not to appear are the same thing. (*Idem est non esse et non apparere.*)

That the record should appear upon which the determination of the appeal might proceed understandingly, we have set forth the motions in arrest and for

a new trial. The office of a motion in arrest is not to strike at matter of mere exception. That is the office of a motion for a new trial. In the present case that line of denarcation is preserved by the movent, and, as the matter in hand pertains to exceptions, we may put to one side the motion in arrest.

Attending to the motion for a new trial, it would be a most strained and unnatural construction on its language to find therein any reference whatever to exceptions to the report of the referee or any complaint based on error in overruling those exceptions. The language of that motion fell from learned attorneys. They must be held to use words with precision and mean what they say—not what they do not say. When they use words well known to jurisprudence and well understood as filling certain offices, we are not permitted to give those words a loose, colloquial meaning, but define them *secundum artem*. In that motion they deal with "verdicts," the admission and exclusion of "evidence," "demurrers," "declarations of law" and "damages"—each of these terms have a well defined meaning in law. They complain therein of the rulings of the court and referee with regard to those matters, but nowhere do they complain of the ruling of the court upon the exceptions to the referee's report. It matters not that there are no "verdicts" or "declarations of law" in equity suits, and there are none here that we can find. Nor are there any "demurrers" in this record. The argument runs this way: As there is nothing to which those complaints can apply, therefore, they should be given some vitality and held to apply to the exceptions to the referee's report and to the action of the court in overruling them. But we decline to follow the lead of that argument. It would lead to dangerous and unheard of results, and play havoc with all certainty and precision of construction.

In this condition of things, although counsel may not have intended to waive those exceptions or waive their complaint of the court in overruling them, yet they do that very thing by pretermitting all reference thereto in the motion for a new trial.

We have so lately been over this matter in State ex rel. v. Woods, 234 Mo. 16, that further exposition is out of place. Other authorities will appear in plaintiff's brief, which the inquiring mind may consult.

On the authority of the Woods case, we affirm the judgment on defendant's appeal.

This case coming into Banc and being reheard the divisional opinion of LAMM, J., is adopted.

All concur, except *Valliant, C. J.*, who dissents in a separate opinion filed, in which *Woodson, J.*, concurs in result.

