THE GLOBE AMERICAN CORPORATION, RESPONDENT, v. K. I. MILLER, APPELLANT.—131 S. W. (2d) 340.

Kansas City Court of Appeals. July 31, 1939.

*L. E. Atherton* and *York & York* for respondent.

*P. M. Marr, Allen Rolston* and *L. F. Cottey* for appellant.

KEMP, J.—This case is here on appeal for the second time, the first appeal, as is the present appeal, having been from a judgment in favor of the plaintiff. On the previous appeal the case was reversed and remanded because of the insufficiency of the petition in failing to allege the performance by plaintiff of the conditions of the alleged guaranty. [See Globe American Corporation v. Miller Hatcheries, Inc., et al., 110 S. W. (2d) 393.]

This is a suit based upon two promissory notes, each in the principal amount of $700, executed by the Miller Hatcheries, Inc., the payment of which, it is alleged, was guaranteed by the defendant, K. I. Miller, who was the president of said corporate defendant. Miller was

made a party defendant on the basis of his alleged guaranty. Defendant Miller Hatcheries did not contest the suit and suffered judgment by default. Defendant Miller appeared, a jury was waived, and the court, upon hearing the evidence, found the issues in favor of plaintiff and against both defendants, in the sum of $1229.45, with interest at eight per cent per annum, compounded annually, from the date of said judgment. From this judgment defendant Miller has prosecuted this appeal. So far, therefore, as the questions involved in this appeal are concerned, this is a suit on the plaintiff's alleged guaranty.

The case was tried upon plaintiff's second amended petition which was in two counts. By adopting in the second count certain allegations in the first count, the allegations of the two counts of the petition are identical, except as to the description of the respective notes and the respective amounts due thereon. The amended petition contained conventional allegations of a suit on a promissory note, and as to the alleged guaranty of defendant Miller contained the following allegations:

"Plaintiff further states that at the request of the plaintiff and before the execution and delivery of the note hereinabove mentioned in consideration of the plaintiff dismissing a certain suit against the Miller Hatcheries then pending in the Circuit Court of Lancaster, Missouri, and in settlement of all claims of plaintiff against either of the defendants herein and if plaintiff would secure as much business from Montgomery Ward & Company as possible and if such orders were not sufficient to pay the notes, the notes were to be renewed for a period of one year, and in further consideration of plaintiff attempting to collect certain checks for defendants (which checks and accounts were never forwarded by defendants to plaintiff) the defendant, K. I. Miller, at the request of the plaintiff did guarantee the payment of said note and said guaranty was with the express intention on the part of the said K. I. Miller of causing plaintiff to accept said note; that said guaranty by which defendant K. I. Miller guaranteed said note is in words and figures as follows, to-wit:

"October 28, 1932.

"Mr. W. D. Harvey
"Globe American Corporation
"Kokomo, Indiana.
"Dear Mr. Harvey:

"We hereby accept your proposition in full settlement of all claims against the Miller Hatcheries of Lancaster, Missouri, or K. I. Miller, personally, which outlined as we understand it is as follows:

"The Miller Hatcheries Incorporated of Lancaster, Missouri are to give two notes of $700 each, these notes drawing 6% interest from date. One note due June 1, 1933 and the other note due July 1, 1933.

It is also understood that the writer will personally guarantee the payment of these two notes, but would like to have this provision understood that if for any reason Montgomery Ward & Co. should fail to send the Miller Hatcheries orders for baby chicks, sufficient to liquidate the two notes, then 50% of the $1400 may be renewed for a period of one year.

"It is also understood that you will use every effort possible to get as much additional business from Montgomery Ward & Co. as possible and that we receive the same price that Ward pays P. F. Clardy for the same grade and variety of chicks.

"It is also agreed that we are to send you certain bad checks we have on a party in Indiana and together with the power of attorney to act for us and any amount collected on these checks or accounts can be applied equally on these two notes. It is also understood and agreed that the Globe American will drop the suit now pending in the Circuit Court of Lancaster, Missouri, against the Miller Hatcheries as soon as this transaction is carried out. The Miller Hatcheries will pay all costs but no attorney fees for the Globe American.

"Very truly yours,
"(signed) K. I. Miller.

"That the Harvey so addressed in said letter was at said time agent and president of the plaintiff company and that said letter was addressed to him as such agent and president and said offer of guaranty was by him accepted on behalf of said company by writing the words 'Accepted Globe American Corp. W. Dow Harvey, President' thereon and in the presence of defendant K. I. Miller. That at all times herein the said W. Dow Harvey was acting as president and agent of plaintiff company and all transactions herein mentioned were with him as president and agent of said company and the defendant K. I. Miller so understood at the time.

"That thereafter the defendant K. I. Miller pursuant to the above guaranty and in accordance with the terms thereof mailed to said W. Dow Harvey, agent of plaintiff, two notes, one of which is note in this count sued on and again personally guaranteed said note which said letter of transmittal on the note and again guaranteeing said note, in words and figures is as follows:

"Lancaster, Missouri
"October 31, 1932.

"Mr. W. D. Harvey
"Globe American Corporation
"Kokomo, Indiana.
"Dear Mr. Harvey:

"We are inclosing two hatchery notes of $700 each, as per our letter of October 28, in settlement of all claims against the Miller Hatcheries of Lancaster or K. I. Miller personally. As per agreement these notes are dated November 1, one for $700, due June 1, 1933, the other note of $700, due July 1, 1933.

"It is also understood and agreed that in the event Montgomery Ward do not send us sufficient orders to take up these notes you will extend one note another year. As explained in my previous letter the writer will personally guarantee these notes to be paid and you are to use every effort possible to get as much additional business from Montgomery Ward as possible.

"Regarding the Indiana account it will be several days before we can send you power of attorney to act, as the attorney who handles legal matters for us· will be rather busy until after the election, but after that time we will get these phoney checks, telegrams and ·other data together, and send them to you together with power of attorney.

"Thanking you for your consideration and with the writer's kindest regards, I am

"Very truly yours,

"The Miller Hatcheries

"By K. I. Miller

"That a copy of said letter is hereto attached and marked Exhibit 'C'.

"Plaintiff states that it has done all things of it required by the terms of said contract to be done but the defendant K. I. Miller has failed and refused to pay the same altho often demanded.

"Plaintiff further states that by reason of the guaranty of the said defendant K. I. Miller as above set out plaintiff was induced to and did accept the note above mentioned when tendered by the Miller Hatcheries, Incorporated."

This is followed in the first count by allegations of the payments made on the first note, whereby the principal had been reduced to $104.56. No payments had been made on the second note.

In view of defendant's contention that the notes sued on contain obligations more onerous than the notes described in his letter of guaranty of October 28, 1932, we set out the first note (omitting credits endorsed on back thereof) in its entirety as follows:

"$700.00                    Lancaster, Mo., November 1, 1932.

"Seven months after date, for value received, we or either of us promise to pay to the order of Globe American Corporation Seven Hundred . . . Dollars with interest at the rate of 6 per cent per annum from date, interest to be due and payable annually and if not paid when due to draw eight per cent interest per annum from maturity and if the interest be not paid annually, to become as principal and bear the same rate of interest. The signers and endorsers each waive demand, notice and protest of this note and further agree to pay all costs and attorney's fees should this note be collected by law, including all expenses. Payable at Schuyler County Bank, Lancaster, Mo.

"(Signed)   The Miller Hatcheries, Inc.

"K. I. Miller, Pres.

"W. F. Bunch, Sec'y."

Except as to the due date, the note described in the second count is identical with the first and need not be set out. At the lower left-hand corner of defendant's letter of guaranty of October 28, 1932, appears (the evidence shows written in ink) the following: "Accepted Globe American Corporation, W. Dow Harvey, President."

The evidence shows the guaranty agreement was reduced to its written form on the date thereof at the Miller Hatcheries in Keokuk, Iowa. Both defendant Miller, and Harvey, president of plaintiff company, participated in its preparation. After Miller signed it, Harvey, on behalf of plaintiff company, executed the aforementioned acceptance in the presence of defendant Miller.

The evidence discloses that some time prior to the execution of the instrument sued on herein, plaintiff had filed a suit in the Circuit Court of Schuyler County against the Miller Hatcheries for an alleged indebtedness of approximately $1700. It was in settlement of the claim involved in that suit that the notes and the alleged guaranty agreement herein sued on were executed on November 28, 1932. Following the execution of these instruments, and prior to the institution of the instant suit, said prior suit was dismissed in conformity with the provisions of said agreement of October 28, 1932, *supra.*

At the outset we are met with plaintiff's motion to dismiss this appeal on the ground that appellant's statement is not "clear and concise . . . without argument, reference to issues of law, or repetition of testimony of witnesses," thus failing to meet the requirements of Rule 16 of this court.

We have re-examined Daniel v. Burns, 283 S. W. 749, Euler v. State Highway Commission, 55 S. W. (2d) 719, Evans v. Hilliard, 112 S. W. (2d) 886, and Sims v. Hydraulic Press Brick Co., 19 S. W. (2d) 294, cited by plaintiff. We find no language in any of these cases which, in our opinion, would warrant the dismissal of this appeal. It is true that in one instance particularly, defendant picks out a sentence from an answer of a witness which, standing alone, may not give the fair import of the witness' testimony on the point involved. However, this too abbreviated quotation of the witness' testimony was accompanied by a page reference to the record which discloses at a glance the setting of the statement. In this instance, conceivably a court might for the moment gain an erroneous impression of the effect of the witness' testimony on this particular point, but by specific page reference to the record a correction of this impression could be accomplished without imposition of any considerable labor upon the reviewing court.

Appellant's statement in the instant case gives a fairly clear and understandable view of the facts in the case. This court said in the case of Nowlin v. K. C. Public Service Co., 58 S. W. (2d) 324, 1. c. 326:

"We should not dismiss an appeal on mere technical grounds, but only when a violation of the rule has resulted in a real evil which the rule was made to avoid; where, as here, the respondent has filed her own statement which, even if the appellant's statement were deficient, gives the court a clear bird's-eye view of the case, the purpose of a statement is subserved, and the motion to dismiss will be denied."

It may be added that plaintiff (respondent) has filed its statement herein which effectively serves the same purpose as did respondent's statement in the Nowlin case, *supra*. The motion to dismiss the appeal is overruled.

Defendant assigns as error the refusal of the trial court to give a declaration of law in the nature of a demurrer to the evidence. In support of this assignment, defendant first urges that defendant's letter of October 28, 1932, *supra*, did not undertake to guarantee notes bearing interest at the rate of eight percent, or notes carrying a provision for the payment of attorneys' fees, or notes containing clauses providing for waiver of demand and notice; that in each of these particulars the notes offered in evidence by plaintiff differed from the notes defendant undertook to guarantee, and that thus the notes in suit impose a different and more onerous burden upon appellant than by his letter of guaranty he intended to assume.

The letter of guaranty provided that "the Miller Hatcheries, Inc., . . . are to give two notes of $700 each, these notes drawing 6 percent interest from date. One note due June 1, 1933, and the other note due July 1, 1933. It is also understood that the writer will personally guarantee the payment of these two notes . . ." This language comprises the full extent of the description of the notes to be guaranteed. However, defendant by another letter dated three days later than his letter of guaranty, forwarded to respondent two notes, each in the principal sum of $700, the due date of one being June 1, 1933, and the other being July 1, 1933, each drawing interest from date at six per cent per annum, said notes being signed by the "Miller Hatcheries, Inc., K. I. Miller, President, W. F. Bunch, Sec'y." To this extent they conformed exactly to the notes specified in the letter of guaranty. The notes so forwarded by defendant contain additional provisions that if not paid when due the notes shall bear interest at the rate of eight percent per annum from *maturity*, provide for the waiver of demand, notice and protest, and provide for the payment of "attorneys' fees should this note be collected by law."

It is because of these additional provisions in the notes that defendant in his brief contends that "this debt is different and more onerous than that contemplated by the alleged letter of guaranty which provides only for six percent notes, authorizes no compounding of interest and embraces no burden of attorneys' fees," defendant concluding with the plea that "appellant should be protected against such an enlargement of his undertaking."

This contention is made in the face of the fact that defendant, acting on behalf of the corporation in his capacity as president thereof, executed these notes and delivered the notes to the plaintiff in his letter of transmittal of October 31, 1932, hereinabove set out. In the letter of transmittal, defendant states, "We are enclosing two Hatchery notes of $700 each, *as per our letter of October 28,* in settlement of all claims against the Miller Hatcheries of Lancaster or *K. I. Miller* personally. As per agreement these notes are dated November 1, one for $700, due June 1, 1933, the other note of $700, due July 1, 1933."

Under such circumstances, how can it fairly lie within the mouth of defendant to now contend that these are not the notes that he undertook to guarantee? It may be of no particular importance to observe that had defendant fulfilled his guaranty promptly upon the due date of the notes, the burden would have been precisely that which was described in said guaranty. But aside from that, certainly it must be conceded that "any enlargement of his undertaking" was of defendant's own making. Having prepared the notes himself, he, in his letter of transmittal, refers to them as the notes referred to in his letter of guaranty of October 28, which were given in settlement of all claims against both the company and himself personally. The notes, therefore, unquestionably represented his understanding of his obligation as set out in his letter of guaranty. This could scarcely be made more clear than by the paragraph above quoted from his letter of transmittal of October 31.

If, however, the first paragraph of this letter could still leave any doubt that these notes sued on were the notes appellant intended to guarantee, then certainly his intention was made clear by the following sentence from the second paragraph of defendant's said letter of October 31, to-wit: "As explained in my previous letter the writer will personally guarantee *these notes* to be paid . . ." (Italics ours.)

Defendant cites the case of W. T. Raleigh Medical Co. v. Modde, 209 S. W. 958, 1. c. 962, and quotes therefrom the following language:

"A guarantor or surety is entitled to stand upon the strict letter of his undertaking."

There can be no question that this correctly states the general rule of law with reference to the construction of the terms of the undertaking of a guarantor. But the facts upon which that rule of law was announced in the cited case, bear no analogy to the facts in the instant case. In the Raleigh Medical Co. case the plaintiff, in whose behalf the guaranty ran, made certain requirements of the principal as to the sale of merchandise, which were by the court held to be an interference by plaintiff (guarantee) with the performance of the contract. At page 962, the court said:

"We think that this was such active interference on the part of plaintiff in the performance of the contract by Van Eeckhoute, substituting a method of performance not contemplated by the contract, and enlarging the risk and liability of these defendants, as such guarantors, as to release defendants from all obligation under the guaranty."

There, it was the party for whose benefit the guaranty was given that undertook to enlarge the liability of the guarantor, or at least to interfere with the principal's performance of the contract, which performance defendants in that case had guaranteed.

If, for instance, in the case at bar, the guarantor had no connection with the maker of the notes in question, and if the plaintiff had prepared the notes with these additional provisions therein, and had procured the execution and delivery of same by the maker thereof, without the acquiescence of the guarantor, the guarantor, in such a case, might then be in a position to make the contention he here urges and might effectively invoke the rule of law declared in Raleigh Medical Company v. Modde, *supra*. But we find no language in the Raleigh case that lends any support to this contention of defendant.

Defendant also cites the case of J. R. Watkins Co. v. Smith, 31 S. W. (2d) 544. The court in that case likewise lays down the rule that contracts of guaranty are to be strictly construed, but we are unable to find any analogy between the facts in that case and the facts in the case at bar. In that case, the guarantor defendants guaranteed the payment of certain merchandise sold to defendant Smith. The guarantors contended that the indebtedness to plaintiff had not been written in the contract when they signed it; that they had no notice of it until they received letters advising of the termination of the contract between plaintiff and Smith, and, further, that the contract upon which the guaranty was based was unenforcible for the reason that Smith did not specifically agree to buy any goods from plaintiff, and was under no obligation so to do.

The court held that the contract was doubtless unenforcible when made but that Smith did buy goods under the contract and that the contract was valid *pro tanto* for the amount of goods ordered by Smith and that, under such circumstances, notwithstanding the strict rule of construction as to contracts of guaranty, the guarantors were liable on their contract of guaranty.

Defendant in the instant case construed the terms of his guaranty by his letter of transmittal of October 31. Defendant makes no charge of fraud, misrepresentation, or mistake of fact in connection with the terms of the notes which he forwarded to plaintiff as the notes referred to in his letter of guaranty. Plaintiff relies upon defendant's own construction of the obligations embraced in said guaranty and, under these circumstances, defendant is not in a position to complain.

In further support of his demurrer to the evidence, defendant contends that the "evidence failed to show a full performance by it (plaintiff) of the conditions precedent contained in said Exhibit 'A' (defendant's letter of October 28)." By acceptance of the terms of this letter of guaranty, plaintiff agreed, (1) to dismiss the then pending suit of the Globe American Company against Miller Hatcheries, (2) to "use every effort possible to get as much additional business (for defendant's company) from Montgomery Ward & Company as possible," and (3) there was a further provision that defendant would send plaintiff "certain bad checks we have on a party in Indiana and together with the power of attorney to act for us and any amount collected on these checks or accounts can be applied equally on these two notes."

It stands admitted by defendant in the record that the suit pending at the time of the execution of the letter of guaranty was dismissed November 28, 1932, and hence compliance with this condition is not questioned. As to the third provision, it is undisputed that no bad checks or accounts were ever forwarded to plaintiff for collection, and hence any contingent duty on plaintiff with respect to same never arose.

Defendant does urge, however, that the evidence failed to show that plaintiff complied with the agreement with respect to using every effort to get as much baby chick business as possible for the Miller Hatcheries from Montgomery Ward & Company.

First, it should be observed that there was no agreement on the part of plaintiff or Mr. Harvey, its president, that any particular amount of business, or indeed that any business, would be secured for Miller Hatcheries from Montgomery Ward & Company. Every effort was to be used to this end, but no specific result was guaranteed. The uncertainty of the result of these efforts was recognized in the following provision in said guaranty agreement: ". . . if for any reason Montgomery Ward & Company should fail to send the Miller Hatcheries orders for baby chicks, sufficient to liquidate the two notes, then 50% of the $1400 may be renewed for a period of one year." In defendant's letter dated three days later, similar language appears, as follows: 'It is also understood and agreed that in the event Montgomery Ward do not send us sufficient orders to take up these notes you will extend one note another year."

As we read the record in this case, we are convinced that it discloses sufficient evidence to support a finding of plaintiff's performance of its agreement "to use every effort possible to get as much additional business from Montgomery Ward & Company as possible."

In construing the meaning of this quoted language, consideration must be given to the relation between plaintiff and Mr. Harvey, its president, on the one hand, and Montgomery Ward & Company on the other. As to this, the evidence shows that Montgomery Ward

was plaintiff's largest customer and nothing more. Plaintiff's enjoyment of the patronage of Montgomery Ward could scarcely be said to put plaintiff in a position to *direct* Montgomery Ward as to the person or persons with whom it should deal in the purchase of baby chicks. The most that plaintiff, or its president, Mr. Harvey, could do was to request and attempt to persuade Montgomery Ward to buy from defendant company. The evidence shows that the president of plaintiff company took this matter up with the Montgomery Ward representative in charge of the purchase of baby chicks and requested him to "turn over as much chick business as he possibly could to the Miller Hatcheries." The witness Harvey further testified: "Well, in several of the subsequent conversations, I asked them why they (Montgomery Ward & Company) were not able to divert more chick business to the Miller Hatcheries, and the reply, in practically every one of those conversations was that they were not getting stock lists regularly from the Miller Hatcheries, and were unable to find out what orders they could send them."

It also seems to us that a genuine good faith effort of plaintiff to induce Montgomery Ward & Company to give chick business to defendant's company is indicated from this further testimony of the same witness, to-wit: "At one time, during the period when we were soliciting this chick business from Montgomery Ward, the Miller Hatcheries were not willing to take orders at the same price that Montgomery Ward were paying to their other sources in this territory, and at that time we agreed to absorb a ten per cent differential between the prices that Miller charged and the prices that their other sources charged." This indicates that plaintiff went beyond any obligations assumed by it in the guaranty agreement in an effort to induce Montgomery Ward & Company to give business to the Miller Hatcheries.

The evidence also shows that all of the credits, aggregating $591.41, endorsed on the first note described herein, represented chick business procured for defendant's company from Montgomery Ward & Company. The fact that more business was not procured might be attributed to the lack of cooperation on the part of defendant's company in failing to furnish regularly to Montgomery Ward & Company stock lists as above noted.

We hold that upon this record the trial court properly denied defendant's requested declaration of law in the nature of a demurrer to the evidence.

Defendant next contends that the court erred in admitting, over his objections and exceptions, certain evidence, designated and discussed in his brief under sub-heads (a) to (e), inclusive, which points we shall pass upon under like designation.

(a) Exhibit "A," which is defendant's letter of guaranty dated October 28, 1932. It is urged that the petition charges that the de-

fendant guaranteed notes which bear eight percent compound interest, certain waiver clauses and payment of attorneys' fees, and that Exhibit "A," which was offered "as being that contract" describes notes different from those sued upon and so offered in evidence.

There is no merit in this contention, and this for the reasons hereinabove set out in disposing of defendant's first ground of contention in support of his position that a demurrer to the evidence should be sustained. Defendant, by his letter of October 31, 1932, declared that the notes enclosed therewith, which were the identical notes herein sued on, were the notes referred to in his letter of October 28 (Exhibit "A"). In the second paragraph of defendant's letter of October 31, he says: "As explained in my previous letter the writer will personally guarantee *these* notes to be paid." He cannot now be heard to say that they are not the notes he undertook to guarantee by his letter of guaranty (Exhibit "A") thus offered in evidence. The objection to this offer was properly overruled.

(b) Defendant objected to plaintiff's Exhibit "B"—defendant's letter of October 31, *supra*, "for the reason that the same is not shown to refer either to the plaintiff's Exhibit 'A' or to the notes described in the petition; and for the further reason that the same is entirely immaterial to and does not tend to prove or disprove any issue made by the pleadings in this cause."

The first sentence of the letter designated as Exhibit "B", specifically refers to defendant's letter of guaranty of October 28th and designates the notes enclosed therewith as the notes provided for in said letter of guaranty. This being true, it follows that the letter was material to the issues in that it strongly negatives defendant's contention that the notes sued on were not the notes which he intended to guarantee. Defendant's objection to Exhibit "B" was properly overruled.

(c) Objection was made to admission in evidence of the two notes herein sued upon (designated as Exhibit "C" and "D"), on the ground that they show on their face they were not the notes which defendant undertook to guarantee. As heretofore pointed out, the evidence shows they were the notes defendant intended to guarantee and hence were properly admitted in evidence.

(d) Witness Harvey was asked: "Would you have accepted the two notes 'C' and 'D' without this personal guaranty of Mr. Miller?" This is objected to as calling for a conclusion and because it was self-serving. Objection was overruled and the witness' answer was "No."

It seems to us that it was entirely immaterial whether the answer to this question was "No" or "Yes." Under the circumstances in this case, either answer would not have any effect upon plaintiff's right of recovery. The facts were that a settlement agreement had been reached, whereby the Hatcheries company was to give plaintiff

its two notes, each in the amount of $700, and defendant Miller was to guarantee their payment, in consideration of which plaintiff was to dismiss its then pending suit against Miller Hatcheries for a larger amount. Defendant's agreement to guarantee these notes was supported by good legal consideration. These facts were established by competent evidence. We do not see how this question and answer could have prejudiced defendant's case in any way. Its admission was at most harmless error.

(e) Inquiry was made of witness Harvey by plaintiff's counsel as to negotiations he had with Montgomery Ward, looking towards inducing that company to make purchases of baby chicks from the defendant company, and the witness was asked to give the "substance" of the conversation had in this connection. The witness gave the following answer: "I asked the buyer to turn over as much chick business as he possibly could to the Miller Hatcheries, and at various times, when I was in this buyer's office, discussed the matter with him, and also had correspondence with him on the subject." Defendant moved to strike the answer for the reason that it was a conclusion and not responsive to the question, which motion was overruled.

While it may be technically contended that this answer is somewhat in the nature of a conclusion, yet we do not believe the trial court could be convicted of error on this ground. It is true the witness did not pretend to reproduce his exact words, but he was undoubtedly attempting to give the substance of what he said on the occasion. Doubtless, to conform to defendant's contention, the witness' answer should have been as follows: "I said, 'I hope you will turn over as much chick business as you possibly can to the Miller Hatcheries.'" That undoubtedly is the effect of the answer as was given. The balance of the answer does not pretend to state what was said but only that there was a conversation and where it was held.

Following the questions and answers to which objections were made, however, the witness was asked to state the substance of other conversations with respect to the procurement of business from the Montgomery Ward & Company, and the answers went in without objection. If all the answers to which objections were made were stricken from the record, there is still sufficient evidence in the record from which the court could find compliance with plaintiff's obligation "to use every effort possible to get as much additional business from Montgomery Ward as possible." From the record covering this entire phase of the examination, we are convinced that this point presents no reversible error.

Appellant assigns as error the ruling of the trial court in excluding Exhibit 2, which is a letter dated October 19, 1932, from W. Dow Harvey, president of plaintiff company, to "K. I. Miller, Miller Hatcheries, Lancaster, Missouri," and also Exhibit 3, which was a

letter of October 22, 1932, written by the Miller Hatcheries in reply to said letter of October 19.

We have carefully examined the motion for new trial and find that the matter of the exclusion of these two letters, marked Defendant's Exhibits 2 and 3, or in fact the matter of the exclusion of any evidence, is nowhere mentioned therein. This matter not having been presented to the trial court in the motion for a new trial is not before us for review. As was said in the case of Maplegreen v. Trust Co., 237 Mo. 350, l. c. 363:

"The office of a motion for a new trial is to gather together those rulings complained of as erroneous and solemnly and formally present them, one by one, in black and white, to the judge, in order that he have a last chance to correct his own errors without the delay, expense or other hardships of an appeal. This, on the theory that even a judge is entitled to a last chance—a *locus poenitentiae.*"

This language was quoted approvingly in Polski v. St. Louis, 264 Mo. 458. And in Gableman v. Bogt, 80 S. W. (2d) 171, l. c. 175, the court there said:

"We have searched the motion for new trial and fail to find wherein either of the two points were mentioned, hence they are not here for review."

Defendant's final assignment of error is that "said judgment was not within the scope of the pleadings and was erroneous upon its face." In support of this assignment defendant contends that the judgment "amounts to a finding that appellant guaranteed some notes but that they were notes containing no attorney fee clause and thus that they were not the notes described in the petition or introduced in evidence for those notes provided for the payment of attorneys' fees." Defendant further contends that "the disallowance of the prayer for attorneys' fees was tantamount to a finding that attorneys' fees were not guaranteed; hence a finding that defendant guaranteed one part, but not another, of the notes."

Upon the record presented here, this contention cannot be sustained. While it is true that the notes contain a general provision for attorneys' fees, no specific amount of attorneys' fees was therein provided for. Furthermore, the record fails to disclose any evidence whatsoever as to the reasonable value of the services rendered in connection with the suit on these notes. Under such circumstances, it cannot reasonably be contended that the failure of the court to include an allowance of attorneys' fees in its judgment was "tantamount to a finding that attorneys' fees were not guaranteed." Under such circumstances, we cannot agree with defendant's contention that the judgment was vitiated because of its failure to include attorneys' fees. Defendant is not in a position to complain because of the failure of the plaintiff to submit evidence with respect to one phase of the obligation sued on.

In accordance with the views herein expressed, the judgment should be, and is hereby, affirmed. *Shain, P. J.,* concurs; *Bland, J.,* not sitting.